The trial court divorced Gerald M. Mosley and Jacqueline L. Mosley and divided their marital property. It awarded custody of one minor child to the husband and the other two minor children to the wife. It ordered the husband to pay the wife $771 per month in child support. The husband appeals.
The parties were married in 1967. They had five children, three of whom were minors at the time of trial. The parties separated in December 1995, and the wife sued for a divorce in January 1996. The wife testified that after she sued for a divorce she began a relationship with an old friend, Don Moss, of Macon, Georgia. She stated, however, that her relationship with Moss was not the cause of the breakdown in the parties' marriage. The wife testified that the husband was incapable of showing affection and that he had been verbally and physically abusive to her for years. According to the wife, the husband told her to "get out" and to see a lawyer about a divorce.
Early in their 28-year marriage, the parties formed a construction business, Eight Mile Erection Company. In 1975, they incorporated the business under the name "G.M. Mosley General Contractors, Inc.," with each party owning shares of the corporation's stock. In 1983, the husband pleaded guilty to a federal mail-fraud charge. He was placed on probation and was ordered to pay restitution in the amount of $110,000. The restitution was paid out of the corporate earnings. The husband later declared bankruptcy and the parties dissolved the corporation. In 1984, they incorporated another construction business under the name "Builders South, Inc." The husband was president and the wife was secretary-treasurer. The wife owned all the shares of stock, and the business was thereby considered a minority-business enterprise. In 1990, the wife's father gave her a $20,000 advance on her inheritance, and she invested that sum in Builders South. *Page 896 
At the time of trial, the wife was 47 years old. She is a high school graduate and is in good health. She has worked in the family business from the beginning. She described her duties at Builders South as follows:
 "[I did] all the payrolls, . . . general ledger [work], collected job cost information, [did] the routing of the trucks to get the equipment to and from the jobs, [did] all the financial things to go to the finance companies, talked to the finance companies, talked to the bankers concerning loans and setting up credit lines, talked to contractors on bids, [took] estimates on jobs, [and] actually got out and helped with the equipment if it had to be loaded and there was no one to load it."
The wife did not return to her duties at Builders South after she filed her divorce complaint. She stated that after she had been gone from the marital home for a while, one of the employees had trouble with a bookkeeping matter and asked for her help. When the wife went to Builders South to help the employee, the husband was verbally and physically abusive to the wife. After that confrontation, the husband changed the locks on the business premises. He also canceled the wife's health insurance. The wife was paid a partial salary for eight weeks and then received unemployment compensation. The trial court ordered the husband to pay the wife $18,000 in family support pending the outcome of the litigation.
The parties agree that shortly after the wife sued for a divorce the husband sold over $400,000 worth of construction equipment, closed the Builders South financial accounts, opened new accounts, and began doing business as "G.M. Mosley Sons." At trial, the husband testified that he sold the equipment in order to pay off tax deficiencies that he said were the result of the wife's negligence and mismanagement of the business finances. The wife testified that she had not failed to pay any taxes the business owed. She stated that she had received no notice of tax deficiencies for the current tax year. The husband maintained that, while the wife was working in the business, she had issued $74,000 worth of payroll checks to him and then had voided them. He said that after the wife left he had received notices of payroll-tax deficiencies and corporate-tax liabilities that were due.
At the time of trial, the husband was 51 years old. He is blind in one eye and takes Prozac for depression, but those disabilities do not prevent him from working.
 I.
The husband argues that he is entitled to a new trial because a portion of the transcript was lost and cannot be reconstructed. The case was tried for five days: September 4, 1996; January 28, 29, and 30, 1997; and February 4, 1997. For January 28, 1997, the transcript contains 67 pages of testimony by the wife. It is apparent that some portion of the wife's testimony from January 28 is missing, because the record reflects that on January 29, the lawyers and the parties referred to matters that were taken up the day before but that do not appear in the record. The court reporter died before completing the transcript. Another court reporter finished the transcript but was unable to locate a portion of the original tapes and notes. She estimated that no more than two hours of testimony was missing. The wife alleges that only three pages of trial testimony is missing. The husband has no estimate of how much testimony is missing. The parties agree that the missing testimony consists of cross-examination of the wife. Neither the parties nor their lawyers have been able to reconstruct the specific questions and the answers given by the wife.
The trial judge who conducted the trial retired. Circuit Judge J. Donald Banks reported to this court that, although the parties had made diligent efforts to find or to reconstruct the testimony, the record does not contain all the evidence presented *Page 897 
at trial. On December 8, 1998, this court certified the record as complete.
The record on appeal contains 706 pages, with 544 pages of testimony. Both parties agree that, during the portion of the wife's cross-examination that is missing from the record, six exhibits were admitted into evidence and the wife several times invoked her Fifth Amendment privilege not to testify. The exhibits consisted of telephone records for the period April 1995 through January 1997, showing over 900 calls between the wife and Don Moss. The parties agree that, during that portion of the trial that would have been recorded in the missing portion of the transcript, the wife repeatedly invoked her Fifth Amendment privilege not to testify as to her relationship with Moss after the date she filed her divorce complaint. She maintained, in other testimony that does appear in the record, that she and Moss did not have sexual relations before December 27, 1995, the date the parties separated.
The husband contends that, without a complete transcript, he will be denied his procedural-due-process right to an effective appeal. He claims that the missing testimony relates to the wife's misconduct and that, without that testimony, this court cannot determine whether the trial court equitably divided the marital property. He argues that there "may be other relevant and material matters contained in the missing testimony" that reflect on the wife's misconduct and that would suggest the trial court's property division was improper.
"[T]he standards of procedural due process are not wooden absolutes. The sufficiency of procedures employed in any particular situation must be judged in light of the parties, the subject matter and the circumstances involved." Ferguson v. Thomas, 430 F.2d 852, 856 (5th Cir. 1970). Based on what the parties agree did occur during the portion of the trial that would have been recorded in the missing portion of the transcript of the testimony, and the husband's failure even to allege that something else occurred that would warrant a reversal of the trial court's judgment, we cannot conclude that the husband has been denied the right to an effective appeal. Cf. Mosley v. State, 461 So.2d 34,36 (Ala.Crim.App. 1984) ("Although Mosley alleges that he has suffered `irreparable harm' and has been denied appellate review due to the absence of a transcript of the sentencing hearing, he fails to allege or even speculate on specific error or injury that may have occurred during sentencing"). We hold that the husband has not been denied any due-process right on appeal.
 II.
The husband contends that the trial court erred by establishing his child-support obligation at $771 per month.
Rule 32(E), Ala. R. Jud. Admin., requires the parties to a divorce proceeding to file "Child Support Obligation Income Statement/Affidavit" forms (CS-41) and "Child Support Guidelines" forms (CS-42). Martin v. Martin, 637 So.2d 901 (Ala.Civ.App. 1994). In the original record as certified to this court on appeal, there was only one CS-42 form: the form filed by the husband. The transcript, however, indicated that the wife had also filed a CS-42 form, but it was not in the record before us. Therefore, pursuant to Rule 10(f), Ala.R.App.P., this court, on its own initiative, ordered that the omission be corrected by supplementing the record with the CS-42 form filed by the wife. The clerk of the Mobile Circuit Court transmitted the missing CS-42 form to us, and it is now a part of the record on appeal.
The parties agreed as to the wife's income. On both forms, the wife's monthly gross income is listed as $736. The parties disagreed, however, as to the husband's monthly gross income. On the husband's CS-42 form, his annual income is listed as $31,200 ($2,600 monthly). On the wife's CS-42 from, the husband's monthly gross income is listed as $4,245 monthly. Using the information supplied on the husband's *Page 898 
form, and calculating the husband's child-support obligation pursuant to Rule 32(B)(9) (providing the computation for split-custody arrangements) would have resulted in a child-support order requiring that the husband pay the wife $398 per month. Using the information supplied on the wife's form, and calculating the husband's child-support obligation pursuant to Rule 32(B)(9) would have resulted in a child-support order requiring that the husband pay the wife $771.45 per month.
There was evidence to support the wife's estimate of the husband's income, and the trial court obviously found that evidence more credible than the evidence supporting the husband's estimate. At trial, the wife contended that the income reported on the husband's CS-42 was too low because it did not include the following items, all of which, the husband admitted, were paid each month by his business, G.M. Mosley Sons:
$1,000 — deposited to husband's retirement account
370 — bank note on the husband's 1996 Dodge truck
60 — utilities (power, water, and telephone)
100 — insurance on the husband's 1996 Dodge truck
85 — premium on the husband's life insurance
? — 1/2 of the bank note on the son's truck
 $1,615 — monthly income in addition to the $2,600 monthly income reflected on the husband's CS-42 form
The wife presented no evidence of how much the business paid on the monthly note for a truck driven by the son who was in the husband's custody. Although the husband conceded that the business paid that expense, he did not know the amount. The wife contends that at least $1,615 in additional monthly income, representing expense reimbursements by the husband's business, should have been imputed to the husband. That amount does not include the sum that, the husband admitted, the business paid on the son's note. If the $1,615 in additional income that the wife claims should have been imputed to the husband is added to the $2,600 that the husband claims is his monthly income, the sum is $4,215 — only $30 less than the amount shown as the husband's income on the wife's CS-42 form. It is reasonable to assume that the trial court believed the evidence presented by the wife and accepted the wife's assessment of the husband's income. It is also reasonable to assume that the $30 difference between the wife's estimate of the husband's income ($4,245) and the income figure derived by adding $2,600 and $1,615 ($4,215) can be accounted for by using a $30 figure for the amount the business paid on the note for the son's truck.
Although this court cannot affirm a child-support order if it has to guess at what facts the trial court found in order to enter the support order it entered, we are authorized to affirm the trial court's judgment if the record "clearly indicat[es] that the award comports with the evidence regarding the parties' incomes" and, thus, that the trial court adhered to the child-support guidelines. See Dismukes v. Dorsey, 686 So.2d 298,301 (Ala.Civ.App. 1996) (emphasis added). We conclude that the record does contain evidence clearly indicating that the child-support award comports with evidence regarding the parties' incomes.
 III.
The husband argues that the trial court abused its discretion in dividing the marital property. He claims that, in dividing the parties' assets, the court failed to consider two types of misconduct by the wife: her adultery and her failing to pay certain taxes that, he maintains, have resulted in thousands of dollars in interest and penalties for the business.
 "When making . . . a division of property, the court should consider several factors, *Page 899 
including the future prospects of the parties; their ages, health, and stations in life; the length of their marriage; the source, value and type of property owned; the standard of living to which the parties have become accustomed during the marriage and the potential for maintaining that standard; and, in appropriate situations, the conduct of the parties with reference to the cause of the divorce. Johnson v. Johnson, 565 So.2d 629
(Ala.Civ.App. 1989). Each case must be decided on its own facts and circumstances. The division of property does not have to be equal, but must be equitable. Id."
Bolton v. Bolton, 720 So.2d 929, 930 (Ala.Civ.App. 1998).
Initially, we note that the trial court was authorized, but not required, to find that the wife was guilty of the misconduct alleged by the husband. Although she repeatedly invoked her Fifth Amendment privilege not to testify about her relationship with Don Moss after the date the divorce complaint was filed, the wife stated that she and Moss were not intimate before the parties separated. "Incidents of adultery occurring after a divorce complaint is filed are admissible to corroborate evidence of adultery before the date of filing, but cannot be the sole basis for granting a divorce on the ground of adultery." Ragan v. Ragan, 655 So.2d 1016 (Ala.Civ.App. 1995). Although claiming the privilege against self-incrimination raises a presumption that operates against the party claiming the privilege, that presumption "is not `sufficient proof' to lead the guarded discretion of a reasonable and just mind to the conclusion that the act of adultery was committed as a necessary inference." Langley v. Langley, 617 So.2d 678, 680 (Ala.Civ.App. 1992).
The evidence regarding the wife's culpability for the business-tax liabilities was disputed. The wife testified that she paid all the taxes that were due, including the payroll taxes on the husband's salary. She stated that she had never received a deficiency notice concerning taxes due for the business in the reporting periods complained of by the husband. On cross- examination, however, she admitted that the I.R.S. had assessed late penalties and interest against the corporation for tax years "all the way back to 1992," while she was working in the business. On cross-examination, the husband conceded that part of his future tax liability stemmed not from any inaction by the wife, but from the sale of corporate assets that occurred after the wife left the business. The trial court made no findings of fact concerning fault by either party. "It is . . . well established that in the absence of specific findings of fact, appellate courts will assume that the trial court made those findings necessary to support its judgment, unless such findings would be clearly erroneous." Ex parte Bryowsky, 676 So.2d 1322, 1324 (Ala. 1996). Given the inconclusive evidence of the wife's adultery before she sued for a divorce and the disputed evidence regarding whether she was responsible for the corporation's current tax liabilities, we cannot conclude that a finding by the trial court that the wife was not at fault would be clearly erroneous.
The marital property consisted of the assets of Builders South; four parcels of real property; furniture, fixtures, and other personal property; the husband's retirement account; and two cemetery lots. The parties attached no valuation to much of the personal property. The division of items such as furniture, jewelry, a gun collection, and a motorcycle was virtually uncontested at trial. Although the parties introduced lists of such personal property, they submitted no evidence of its value and spent virtually no time at trial challenging how it should be divided.
The dispute at trial centered on how the business assets should be divided. The evidence as to the net value of Builders South was highly disputed. While the parties generally agreed as to the worth of the corporation's assets, they disagreed as to the amount of its liabilities. The corporate *Page 900 
assets, including office equipment, construction machinery, vehicles, tools, receivables, and cash deposits (but excluding real estate and improvements) were valued at approximately $990,000.
The parties owned 168 acres on Arden Road in Chunchula, Alabama. The headquarters of Builders South is situated on five of those acres. The five-acre tract is valued at $10,000. Improvements on the five-acre tract include an office building with an attached living space that was the parties' homeplace, valued at $65,000; a commercial warehouse valued at $100,000; and a garage with a small apartment, valued at $36,000. An area of 3 additional acres provides highway frontage for the business site. The remaining area of 160 acres in the 168-acre parcel is timberland, and it is valued at $170,000. The parties owned the following additional real property: a two-acre lot in Chunchula that had belonged to the wife's family, valued at $7,000; a lot on Highway 45 in Eight Mile, Alabama, valued at $140,000; and a lot on Ziegler Road valued at $25,000.
The wife testified that she was not requesting, and did not want, periodic alimony. She stated that, in lieu of alimony, she preferred to have income-producing property, such as the 160 acres of timberland, or a piece of construction equipment, such as a crane, that she could lease to another contractor. The trial court awarded the husband all the assets of Builders South except for the five-acre tract and the improvements constituting the business premises, which it awarded to the wife. The trial court also awarded the husband the commercial lot on Ziegler Road. The trial court awarded the wife the remaining real estate: the 160 acres of timberland on Arden Road, the two-acre lot in Chunchula that had belonged to the wife's family; and the lot on Highway 45 in Eight Mile. The husband's award, excluding debts and liabilities, totals approximately $1,215,000. The wife's award totals approximately $428,000. There are no outstanding debts or liabilities on the property awarded to the wife.
The husband maintains that the debts and liabilities on the property awarded to him amount to $784,644.69. Even if we accepted the husband's debt-and-liability figure as accurate, the husband's net award would amount to $430,355.31, a figure very close to the wife's net award. The husband contends that the property division was inequitable because, although the trial court gave him the assets of Builders South, it failed to include the premises on which Builders South is located, its office, warehouse, and garage — all of which are, according to the husband, necessary to the continued operation of the business. He claims that if the business has to pay the expense of relocation, as well as having to shoulder its other liabilities, it may not survive. The award of the business premises to the wife, of course, does not necessarily require the business to relocate. The husband may buy the wife's interest or pay her rent. Cf. James v. James, [Ms. 2970720, March 5, 1999] ___ So.2d ___, ___ (Ala.Civ.App. 1999) (observing that the trial court's order "does not prohibit the husband from . . . buying out the wife's . . . interest"). The latter option could, in fact, be what the trial court had in mind by awarding the wife the property. She unequivocally stated that she wanted income-producing property instead of alimony.
In our opinion, the net value of the property awarded to the husband totals more than $430,355.31. Some of what the husband considers his "liabilities" may not, as a matter of law, be used to offset the value of his assets for purposes of the property division in this divorce. For example, the husband listed a "Gaskin lawsuit" as a $272,000 liability. The husband is the plaintiff in that lawsuit; his complaint seeks $450,000 in damages. Gaskin counterclaimed, seeking $272,000 in damages. The husband did not list his $450,000 claim against Gaskin as an asset, yet *Page 901 
he characterized Gaskin's $272,000 counterclaim as a liability.
A plaintiff's lawsuit is generally considered a contingent asset. See, e.g., State v. Williams, 101 N.C. App. 412,414, 399 S.E.2d 348, 349 (1991). Logically, therefore, a counterclaim against the plaintiff is a contingent liability. Although Alabama appellate courts have not dealt with the issue whether such contingencies should be included in the valuation of marital property, Florida has a family-law rule of procedure that addresses the issue. In Florida, contingent assets and contingent liabilities are not included in the computation of the parties' net worth, but are assessed (and divided) separately from other marital "property." See Amendments to Florida Family Law Rules of Procedure, 713 So.2d 1, 31 (Fla. 1998).
The husband listed a "McPhearson judgment" as a $26,000 liability. The evidence established that McPhearson sued Builders South for workers' compensation benefits and was awarded a judgment of $11,476.33.[1] The husband testified that the issue whether the judgment would be paid by his workers' compensation carrier was "currently in dispute" because he had filed a declaratory judgment action to determine whether the matter was covered by insurance. The McPhearson judgment, like the Gaskin counterclaim, was a contingent liability.
Finally, although the husband claimed to have a $75,000 federal tax liability, he presented no supporting documents to back up his claim. Under the circumstances, the trial court was authorized to give his testimony little or no weight. When a trial court receives ore tenus evidence in a divorce proceeding, its judgment is presumed correct if it is supported by the evidence. Waid v. Waid, 540 So.2d 764 (Ala.Civ.App. 1989). This court is not permitted to substitute its judgment for that of the trial court unless the trial court has abused its discretion. Beckwith v. Beckwith, 475 So.2d 575 (Ala.Civ.App. 1985). We find no abuse of discretion.
The judgment of the circuit court is affirmed.
AFFIRMED.
Robertson, P.J., and Monroe and Thompson, JJ., concur.
Yates, J., concurs in the result.
[1] The husband testified that the amount over and above the $11,476.33 judgment was for attorney fees.