THOMAS, Judge.
Japar M. Tabyshaliev ("the husband") and Brandi Tabyshaliev ("the wife") were married in Colorado in October 2011 after a six-month online courtship and a nine-month cohabitation in Jacksonville, Florida. The parties separated in September 2015, when the wife left the parties' Colorado apartment with the parties' two children and returned to Alabama to live with her mother, where she continued to reside at the time of trial. After the separation, the husband visited California and lived in Maryland, West Virginia, and, finally, Virginia, where he lived at the time of trial.
The wife sought and received a protection-from-abuse ("PFA") order from the Covington Circuit Court ("the trial court") in 2015. The husband, although admittedly served with the complaint in that action, failed to defend or appear. Among other things, the PFA order contained a restraining order preventing the husband from contacting the wife and prohibited the husband from exercising visitation with the parties' two young children.
The husband sued the wife for a divorce in the trial court in March 2016. After a two-day trial, the trial court entered a judgment divorcing the parties on June 8, 2017. Among other things, the divorce judgment awarded the wife the house that the parties own in Colorado ("the Colorado *52 house"), awarded the wife custody of the children, awarded the husband four hours of supervised visitation with the children once per month, ordered the husband to pay $430 per month in child support, and ordered the husband to pay the wife $200 per month in alimony.
The record reveals the following facts pertinent to our resolution of this appeal. Neither party was employed during the marriage; the husband operated an online sales business, and the wife received annuity payments from a settlement resulting from the wrongful death of her father. The parties lived on savings the husband had from before the marriage, profits from the online business, and the wife's annuity payments, including $83,000 realized when the parties sold $130,000 worth of the wife's future annuity payments. The husband testified that his monthly income from the online business fluctuated greatly, ranging from a high of $13,000 to a low of $250; he noted that the business was not consistent and that he had discontinued the business for a time. The parties did not file income-tax returns during the marriage.
The husband testified that, at the time of the trial, he was the head valet at a hotel in the Washington, D.C., area, where he earned $9 per hour plus tips. The husband said that he worked 40 hours per week, resulting in base earnings of $1,588 per month. He testified that his tips varied; however, he testified that he had earned approximately $3,500 in tips over a five-month period in the early part of 2017. He said that his rent, which included his utilities, was $1,000 per month and that he spent between $300 and $400 per month on food and $100 on transportation costs.
The wife testified that she was not employed. She said that she had been seeking employment but that she lacked experience, which made finding employment more difficult. She also testified that she had not obtained a driver's license; however, she said that she currently held a driver's permit and that she intended to take the road test as soon as she qualified to do so. The wife admitted that she and the children lived with her mother, her stepfather, and her 30-year-old stepbrother; no other information about the wife's living arrangements is contained in the transcript.
As noted above, the trial court divorced the parties on June 8, 2017. The trial court awarded the wife the Colorado house, awarded the wife custody of the children, awarded the husband four hours of supervised visitation once per month, ordered the husband to pay $430 per month in child support, and ordered the husband to pay $200 per month in rehabilitative periodic alimony. The husband did not file a postjudgment motion and instead filed a timely notice of appeal. On appeal, he argues (1) that the trial court erred by admitting a copy of the PFA order into evidence, (2) that the trial court abused its discretion in the division of marital property and award of alimony, (3) that the trial court abused its discretion by awarding him only four hours of supervised monthly visitation with the children, and (4) that the trial court erred by calculating the award of child support without using the child-support-guidelines forms required under Rule 32, Ala. R. Jud. Admin.
The husband first argues that the trial court erred to reversal by admitting into evidence the PFA order. The husband contends that the PFA order was extrinsic evidence, that he lacked personal knowledge of its contents, and that it was not properly authenticated. Thus, he argues, its admission prevented the husband from having a fair and impartial trial.
*53 However, a review of the record indicates that, although its was mentioned several times during the trial and was marked for identification, the PFA order was not actually offered or admitted into evidence. Both parties referred to the PFA action in their pleadings, and the wife specifically referenced the fact that she had custody of the children based on the PFA order. Thus, it appears that the trial court chose to take judicial notice of the PFA order. See Butler v. Olshan, 280 Ala. 181, 187-88, 191 So.2d 7, 13 (1966) (stating that "where a party refers to such other proceeding or judgment in his pleading for any purpose, the court, on demurrer by the other party, may and should take judicial notice of the entire proceeding in so far as it is relevant to the question of law presented"); see also Lesley v. City of Montgomery, 485 So.2d 1088, 1093 (Ala. 1986) ("When a party refers to another proceeding or judgment of a court in his pleading before that same court, the court on motion to dismiss may take judicial notice of the entire proceeding."); and Slepian v. Slepian, 355 So.2d 714, 716 (Ala. Civ. App. 1977) (indicating that, when a case before the same court is referred to in a motion to dismiss, a trial court is "authorized and required" to take judicial notice of the mentioned proceedings). The husband does not challenge the propriety of the trial court's judicially noticing the PFA order, and his arguments concerning his lack of personal knowledge of the contents of the PFA order and the lack of proper authentication of the PFA order are inapplicable to the trial court's action. We therefore find no error in the trial court's consideration of the PFA order.
We turn now to the husband's argument that the trial court abused its discretion in its division of property and award of rehabilitative periodic alimony to the wife. The husband argues that the evidence presented to the trial court indicated that the Colorado house was marital property, and, he contends, the wife did not prove a need for alimony. The trial court made no specific findings of fact relating to the property division or alimony award in the divorce judgment, and the husband did not challenge the sufficiency of the evidence supporting the division of property and the award of rehabilitative periodic alimony to the wife in a postjudgment motion. Therefore, the husband failed to properly preserve these issues for appellate review, and we need not consider the husband's arguments further. See Rieger v. Rieger, 147 So.3d 421, 429 (Ala. Civ. App. 2013).
The husband next challenges the trial court's judgment insofar as it awarded him only four hours of supervised visitation with the children per month. The husband concedes that the evidence at trial supports the requirement that his visitation be supervised. However, he complains on appeal that the four-hour limitation on his visitation is erroneous because, he says, he will have to expend significant time and money to exercise his visitation and, therefore, that he will likely have to choose between visiting his children and meeting his expenses. As noted above, the husband did not file a postjudgment motion and therefore did not present his contention that such limited visitation would be too financially burdensome to the trial court; in addition, although he provides figures in his brief on appeal regarding the time and expense he anticipates it will take to exercise visitation, he did not present that evidence to the trial court. As a result, we are unable to consider the husband's argument further.[1] See *54 Neal v. Neal, 856 So.2d 766, 778 (Ala. 2002) (quoting Beavers v. County of Walker, 645 So.2d 1365, 1372 (Ala. 1994) ) (" '[I]t is a well-settled rule that an appellate court's review is limited to only those issues that were raised before the trial court. Issues raised for the first time on appeal cannot be considered.' "); McClellan v. McClellan, 959 So.2d 658, 662 (Ala. Civ. App. 2006) (citing Coleman v. Estes, 281 Ala. 234, 237, 201 So.2d 391, 393 (1967) ) ("This court cannot consider alleged facts that are not established by the record on appeal."). We therefore affirm the trial court's judgment insofar as it awarded the husband four hours of supervised visitation per month.
Finally, the husband argues that the trial court's award of child support should be reversed because the record is devoid of the required child-support-guidelines forms. The husband correctly notes that we have reversed a trial court's judgment insofar as it established a child-support obligation when the record did not contain a child-support-income affidavit, also known as a CS-41 form, or a child-support-guidelines calculation sheet, also known as a CS-42 form. See Martin v. Martin, 637 So.2d 901, 902 (Ala. Civ. App. 1994). However, we have often explained that the fact that such forms do not appear in the record does not require reversal in every case. See Mosley v. Mosley, 747 So.2d 894, 898 (Ala. Civ. App. 1999) (quoting Dismukes v. Dorsey, 686 So.2d 298, 301 (Ala. Civ. App. 1996) ); see also Devine v. Devine, 812 So.2d 1278, 1282 (Ala. Civ. App. 2001). We have held that "we are authorized to affirm the trial court's judgment if the record 'clearly indicat[es] that the award comports with the evidence regarding the parties' incomes' and, thus, that the trial court adhered to the child-support guidelines." Mosley, 747 So.2d at 898 (quoting Dismukes, 686 So.2d at 301 ). We will therefore consider the evidence contained in the record to determine whether we can discern whether the child-support award comports with the child-support guidelines.
The testimony at trial indicated that the wife had no income. The husband testified regarding his monthly base income, which was $1,588 per month, and his tips, which, he reported, had been $3,500 over a five-month period (or $700 in tips per month); thus, his income could be considered to be approximately $2,288 per month. The record contains no indication that the wife incurs any child-care expenses, and the children are covered by Medicaid. As noted above, the trial court ordered the husband to pay $430 per month in child support for two children.
The amount of child support awarded, based on the schedule of basic child-support obligations contained in the appendix to Rule 32, Ala. R. Jud. Admin., corresponds with a combined gross monthly income of approximately $1,400, an amount less than even the husband's base pay, without consideration of his tips. Thus, even had the trial court considered the wife's income to be zero, the amount of child support awarded does not comport with the guidelines. Had the trial court imputed minimum wage to the wife and determined the husband's income to be $2,288, making the parties' combined monthly income approximately $3,500, the appropriate child-support obligation would be $928; in such a case, based on the *55 calculations required by Rule 32, the husband's share of the child-support obligation would be $603, an amount significantly higher than the $430 award in the judgment. Although a trial court is permitted to deviate from the child-support guidelines when calculating child support if "the application of the guidelines would be unjust or inappropriate," it must state the reasons for any deviation in writing, see Rule 32(A), and the record contains no such written statement from the trial court. Thus, based on the evidence regarding the parties' incomes in the record, we are unable to determine how the trial court computed the husband's child-support obligation, and we have no choice but to reverse the child-support award. See Suggs v. Suggs, 54 So.3d 921, 927 (Ala. Civ. App. 2010) (reversing an award of child support and stating that, "without the standardized child-support forms required by Rule 32, we are unable to determine whether the trial court appropriately applied the child-support guidelines in establishing the award of child support").
After a review of the record and because the husband failed to file a postjudgment motion to preserve his challenge to the sufficiency of the evidence, we affirm the trial court's judgment insofar as it awards the husband four hours of supervised visitation per month, awards the Colorado house to the wife, and awards the wife $200 per month in rehabilitative periodic alimony. We also find no error in the trial court's taking judicial notice of the PFA order. Finally, we reverse the judgment insofar as it orders the husband to pay $430 per month in child support. On remand, the trial court is instructed to recalculate the husband's child-support obligation based on the evidence regarding the parties' incomes and is instructed to complete a child-support-guidelines calculation sheet or CS-42 form.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
Thompson, P.J., and Pittman, J., concur.
Moore and Donaldson, JJ., concur in the result, without writing.

However, even if we were to consider the husband's argument, we note that we have indicated that a trial court's discretion over the issue of visitation is quite broad and that the primary consideration for the trial court is the best interest of the children involved, not those of the parent. Hand v. Hand, 617 So.2d 1040, 1042 (Ala. Civ. App. 1993) (affirming a 48-hour limitation on visitation despite the fact that the noncustodial parent had to travel 5,000 miles at a cost of $1,800 to exercise that visitation).