Jacqueline Lee Mosley Moss ("the wife") and Gerald M. Mosley ("the husband") were divorced on May 16, 1997. This is the second time they have been before this court. The husband appealed from the judgment of divorce, arguing, among other things, that the trial court's division of the marital property was inequitable. This court affirmed the judgment in Mosleyv. Mosley, 747 So.2d 894 (Ala.Civ.App. 1999).
The following excerpts from this court's opinion inMosley provide the factual background *Page 562 
underlying the parties' dispute, both at the time of the divorce and now, nine years later, with respect to the family business known as "Builders South, Inc.":
 "In 1984, [the husband and the wife] incorporated [a] construction business under the name `Builders South, Inc.' The husband was president and the wife was secretary-treasurer. The wife owned all the shares of stock, and the business was thereby considered a minority-business enterprise. In 1990, the wife's father gave her a $20,000 advance on her inheritance, and she invested that sum in Builders South.
 ". . . [The wife] has worked in the family business from the beginning. She described her duties at Builders South as follows:
 "`[I did] all the payrolls, . . . general ledger [work], collected job cost information, [did] the routing of the trucks to get the equipment to and from the jobs, [did] all the financial things to go to the finance companies, talked to the finance companies, talked to the bankers concerning loans and setting up credit lines, talked to contractors on bids, [took] estimates on jobs, [and] actually got out and helped with the equipment if it had to be loaded and there was no one to load it.'"
Mosley v. Mosley, 747 So.2d at 895-96.
 "The marital property consisted of the assets of Builders South; four parcels of real property; furniture, fixtures, and other personal property; the husband's retirement account; and two cemetery lots. The parties attached no valuation to much of the personal property. The division of items such as furniture, jewelry, a gun collection, and a motorcycle was virtually uncontested at trial. Although the parties introduced lists of such personal property, they submitted no evidence of its value and spent virtually no time at trial challenging how it should be divided.
 "The dispute at trial centered on how the business assets should be divided. The evidence as to the net value of Builders South was highly disputed. While the parties generally agreed as to the worth of the corporation's assets, they disagreed as to the amount of its liabilities. The corporate assets, including office equipment, construction machinery, vehicles, tools, receivables, and cash deposits (but excluding real estate and improvements) were valued at approximately $990,000.
 "The parties owned 168 acres on Arden Road in Chunchula, Alabama. The headquarters of Builders South is situated on five of those acres. The five-acre tract is valued at $10,000. Improvements on the five-acre tract include an office building with an attached living space that was the parties' homeplace, valued at $65,000; a commercial warehouse valued at $100,000; and a garage with a small apartment, valued at $36,000. An area of 3 additional acres provides highway frontage for the business site. The remaining area of 160 acres in the 168-acre parcel is timberland, and it is valued at $170,000. . . .
 "The wife testified that she was not requesting, and did not want, periodic alimony. She stated that, in lieu of alimony, she preferred to have income-producing property, such as the 160 acres of timberland, or a piece of construction equipment, such as a crane, that she could lease to another contractor."
Mosley v. Mosley, 747 So.2d at 899-900.
Paragraph 14 of the divorce judgment awarded the husband "the business known as `Builders South,' and the assets of said company," followed by a lengthy list of specific tools, machinery, equipment, office *Page 563 
furniture, and fixtures. Paragraph 9 of the judgment awarded the wife "the Arden Road property of approximately 168 acres." Paragraph 11 awarded the wife "the five-acre lot located on Arden Road, the commercial office with efficiency apartment and the metal building/warehouse located on Arden Road."
Both parties filed timely postjudgment motions (the husband on May 27, 1997, and the wife on June 16, 1997), requesting the trial court to clarify its property division. Each motion pointed out that in paragraph 14 the court had awarded the husband Builders South and its assets, yet in paragraphs 9 and 11 the court had awarded the wife real property owned by Builders South. The trial court failed to rule on either motion within 90 days. For the husband's motion, the ninetieth day was August 25, 1997, and for the wife's motion, the ninetieth day was September 14, 1997.[1] Nevertheless, on September 16, 1997, the trial court entered an order purporting to amend the divorce judgment to award the husband all the assets of Builders South except those assets specifically awarded to the wife in paragraphs 9 and 11. The husband's notice of appeal inMosley v. Mosley was timely because it was filed on September 23, 1997, which was within 42 days of August 25, 1997, the date on which the husband's postjudgment motion was deemed denied. No issue with respect to the trial court's purported amendment of the property division was raised by the parties or addressed by this court in Mosley v. Mosley.
The husband and the wife filed a number of postdivorce pleadings, including multiple contempt petitions and motions to modify the divorce judgment. Many of the contempt petitions stemmed from the parties' disagreement over the true ownership of the 168 acres of real property on Arden Road. On May 20, 2002, the parties had pending before the trial court, among other things, cross-petitions seeking to hold the other in contempt when, on that date, Builders South, Inc., moved to intervene, alleging that it was the owner of the real property located on Arden Road and averring that, on information and belief, the wife had trespassed on the property and had harvested an unknown quantity of timber belonging to Builders South. Neither party objected to the proposed intervention, and, on July 8, 2002, the trial court granted Builders South's motion to intervene.
On November 18, 2002, the trial court entered an order "restraining all parties from cutting timber from the real property, the title to which is in question, pending further orders of th[e] court." The order further required the wife to provide an accounting of all timber cut on the property and set the matter for a hearing on all pending motions. The matter was continued and reset several times. The parties submitted briefs to the trial court outlining their respective positions. Builders South argued that the judge who had tried the divorce case had no jurisdiction to distribute property titled in Builders South when Builders South was not a party to the divorce action and the judge had made no express finding that the corporation and its assets were marital property.
On November 29, 2004, the trial court entered the following order:
 "This cause coming on to be heard on November 15, 2004, on all pending motions as filed by the parties in this cause; neither party being present but represented *Page 564 
by counsel; and from the arguments of counsel, briefs as submitted in this cause, and upon consideration, it is hereby ORDERED by the Court as follows:
 "1. That the Court finds that it has no jurisdiction to make any further orders with respect to property titled in the name of any corporation which was not made a party to [the divorce] proceedings.
 "2. That all pending motions are hereby denied.
 "3. That the costs of this cause having been prepaid, no costs are due to be taxed herein."
On March 30, 2005, 121 days after the entry of the foregoing order, Builders South filed a "Motion for Clarification" that states:
 "COMES Now the Intervenor Builders South [and] requests clarification of this court's order of November 29, 2004, a copy of which is attached as Exhibit A. Being unaware of the order of November 29, despite checking the clerk's `order box' on a regular basis, this defendant sent a proposed order to the court, by letter of January 13, 2005, the letter and order attached hereto as Exhibit B.
 "This defendant is uncertain from a review of the order of November 29, 2004, as to whether Paragraph 1. of that order applies to all orders entered by the court in this case with respect to property owned by Builders South, or applies only to future orders which the court might make with respect to the property of Builders South.
 "This defendant requests oral argument of this motion at the court's earliest convenience."
On June 29, 2005, the trial court granted the "Motion for Clarification" and purported to amend its November 29, 2004, order nunc pro tunc to read as follows:
 "The original judgment of Divorce was entered in this cause on May 16, 1997. Builders South, Inc., allowed to intervene in this cause without objection from either [the wife] or [the husband], has moved the Court to correct confusion which has resulted from the original and a subsequent order, especially as those orders impact the assets and viability of the Intervenor. Builders South, Inc. has argued that, although it was not a party in the case at that time, the Judgment distributed its assets in a way that made it unable to function. Following entry of the original Judgment, both of the original parties to this action filed appropriate post-trial motions. The Court took no action on either post-trial motion and, pursuant to Rule 59.1 [Ala. R. Civ. P.], both motions were denied by operation of law. . . . On September 16, 1997, after both post-trial motions were deemed to be denied, the Court nevertheless amended the original Judgment. Builders South, Inc. has correctly argued that the amended Judgment is, simply put, a void document.
 "During the argument of the motion urged by Builders South, Inc., the one fact that the parties agreed on is that the two judgments issued by this Court have created a tangled web which has significantly impacted the rights and privileges of Builders South, Inc. as a functioning entity. Builders South, Inc. also points out that except for the [wife] and [husband], no one from the Bench or Bar at the time of the entry of the separate Judgments remains involved with this case.
 "The Court agrees with the arguments of Builders South, Inc., and with the authority submitted by it in support of its arguments. The Court therefore, holds as follows: *Page 565 
 "(A) The Order of Court issued in this case on September 16, 1997 is a nullity.
 "(B) The original Judgment of Divorce entered in this cause on May 16, 1997, is the valid judgment in this case. That Judgment, however, is flawed in its inconsistent and improper distributions of the property of the intervenor, Builders South, Inc., when Builders South was not a party to the action, and when neither the corporation nor its assets were found to be marital assets of the parties. The Judgment purported to award the assets of Builders South to the [husband] but, in other paragraphs, awarded property to the [wife], without acknowledging that the property was owned by Builders South, Inc. The Court, therefore reaffirms paragraph 14 of the original Judgment of Divorce which awarded `to the [husband] the business known as Builders South, Inc. and the assets of said company . . .' Since paragraph 9 and 11 of the original Judgment are inconsistent with the clear intent of paragraph 14, paragraphs 9 and 11 of the Judgment of Divorce are hereby void, as are any other paragraphs in the original Judgment which, without acknowledgment of ownership, awarded assets of Builders South, Inc. to the [wife]."
Despite being labeled a "motion for clarification," the March 30, 2005, motion by Builders South sought more than a clarification of the trial court's November 29, 2004, order. A "motion for clarification" is just what the name implies: a request for an explanation from the trial court as to the meaning of a prior, allegedly unclear, order. A "motion for clarification" does not seek to persuade the trial court that a prior judgment should be changed, modified, or invalidated. If it does seek to do any of those things, then it is not a "motion to clarify" a judgment, but a motion to alter, amend, or vacate a judgment, one that, pursuant to Rule 59(e), Ala. R. Civ. P., must be filed not later than 30 days after entry of the judgment. If a trial court's response to a "motion for clarification" is to explain, rather than to alter, amend, or vacate a prior order, then that response is a strong indicator that the motion was, in fact, one seeking clarification.See Gold Kist, Inc. v. Crouch, 671 So.2d 695, 696
(Ala.Civ.App. l995) (noting that "the original order was not modified by [the request for clarification]; the court simply clarified what we conclude was an abundantly clear order"). The converse is also true. If the trial court's response to a motion for clarification does "more than merely clarify the trial court's previous order," by making, for example, "modifications that [are] more substantial in nature than the correction of a mere mechanical mistake," then such corrections must be made pursuant to either Rule 59(e) or Rule 60(b), Ala. R.App. P.Pate v. Pate, 849 So.2d 972, 976 (Ala.Civ.App. 2002).
The motion by Builders South sought oral argument and attached a "proposed order" aimed not only at altering the trial court's November 29, 2004, order, but also at amending the eight-year-old divorce judgment. The motion accomplished that aim when the trial court, in purporting to amend the divorce judgment on June 29, 2005, adopted, verbatim, Builders South's proposed order. We can hardly imagine a motion less deserving of the designation "motion for clarification"; we conclude that it was a postjudgment motion to alter, amend, or vacate a judgment pursuant to Rule 59(e), Ala. R.App. P. The motion cannot be construed as one pursuant to Rule 60(b), Ala. R.App. P., because it did not allege any of the grounds for relief under that rule.See Luker v. Carrell, [Ms. 2040318, March 31, 2006] ___ So.2d ___ (Ala.Civ.App. 2006). *Page 566 
The motion was filed on March 30, 2005, 121 days after the court's November 29, 2004, order, long past the time for filing either a postjudgment motion pursuant to Rule 59(e), Ala. R. Civ. P., or a notice of appeal pursuant to Rule 4(a), Ala. R.App. P., and long after the trial court had lost jurisdiction to alter, amend, or vacate the November 29, 2004, order. SeeGeorge v. Sims, 888 So.2d 1224 (Ala. 2004):
 "`A final judgment is an order "that conclusively determines the issues before the court and ascertains and declares the rights of the parties involved."' Lunceford v. Monumental Life Ins. Co., 641 So.2d 244, 246 (Ala. 1994) (quoting Bean v. Craig, 557 So.2d 1249, 1253 (Ala. 1990)). Generally, a trial court has no jurisdiction to modify or amend a final order more than 30 days after the judgment has been entered, except to correct clerical errors. See Rule 59(e) and Rule 60, Ala. R. Civ. P.; Cornelius v. Green, 477 So.2d 1363, 1365
(Ala. 1985) (holding that the trial court had no jurisdiction to modify its final order more than 30 days after its final judgment); Dickerson v. Dickerson, 885 So.2d 160, 166 (Ala.Civ.App. 2003) (holding that, absent a timely postjudgment motion, the trial court has no jurisdiction to alter, amend, or vacate a final judgment); and Superior Sec. Serv., Inc. v. Azalea City Fed. Credit Union, 651 So.2d 28, 29 (Ala.Civ.App. 1994) ('It is well settled that after 30 days elapse following the entry of a judgment, the trial court no longer has authority to correct or amend its judgment, except for clerical errors.')."
888 So.2d at 1226-27.
Because the trial court's November 29, 2004, order became final before Builders South ever filed its "Motion for Clarification," the court had no jurisdiction to amend its November 29, 2004, order and its June 29, 2005, order purporting to do so and to amend the divorce judgment is void. An appeal from a void judgment must be dismissed. See, e.g., Ex parte CitizensBank, 879 So.2d 535, 540 (Ala. 2003); and Carter v.Hilliard, 838 So.2d 1062 (Ala.Civ.App. 2002).
APPEAL DISMISSED.
THOMPSON, PITTMAN, and BRYAN, JJ., concur.
MURDOCK, J., concurs in the result, without writing.
[1] September 14, 1997, was a Sunday; therefore, the wife's postjudgment motion was deemed denied by operation of law on September 15, P. 1997. See Rule 6(a), Ala. R. Civ.