PER CURIAM.
 

 Jacqueline Lee Mosley appeals from the trial court’s order requiring her to deliver the deed to certain real property to Builders South, Inc. (“Builders South”).
 

 The disposition of this appeal is dependent upon the procedural history of this case, which is as follows. Mosley and her husband, Gerald M. Mosley (“the husband”), divorced in 1997. The divorce judgment awarded Mosley, among other things, 168 acres, known as the “Arden Road property.” The husband appealed from the divorce judgment, claiming that the trial court had abused its discretion in dividing the marital property, including the assets of the parties’ construction business, Builders South.
 
 [1]
 

 Mosley v. Mosley,
 
 747 So.2d 894 (AIa.Civ.App.1999).
 

 In
 
 Mosley,
 
 this court affirmed the trial court’s judgment awarding Mosley the Arden Road property, analyzing the arguments of the parties as follows:
 

 “The dispute at trial centered on how the business assets should be divided. The evidence as to the net value of Builders South was highly disputed. While the parties generally agreed as to the worth of the corporation’s assets, they disagreed as to the amount of its liabilities. The corporate assets, including office equipment, construction machinery, vehicles, tools, receivables, and cash deposits (but excluding real estate and improvements) were valued at approximately $990,000.
 

 “The parties owned 168 acres on Arden Road in Chunchula, Alabama. The headquarters of Builders South is situated on five of those acres. The five-acre tract is valued at $10,000. Improvements on the five-acre tract include an office building with an attached living space that was the parties’ homeplace, valued at $65,000; a commercial warehouse valued at $100,000; and a garage with a small apartment, valued at $36,000. An area of 3 additional acres provides highway frontage for the business site. The remaining area of 160 acres in the 168-acre parcel is timberland, and it is valued at $170,000. The parties owned the following additional real property: a two-acre lot in Chun-ehula that had belonged to [Mosley’s]
 
 *808
 
 family, valued at $7,000; a lot on Highway 45 in Eight Mile, Alabama, valued at $140,000; and a lot on Ziegler Road valued at $25,000.
 

 “[Mosley] testified that she was not requesting, and did not want, periodic alimony. She stated that, in lieu of alimony, she preferred to have income-producing property, such as the 160 acres of timberland, or a piece of construction equipment, such as a crane, that she could lease to another contractor. The trial court awarded the husband all the assets of Builders South except for the five-acre tract and the improvements constituting the business premises, which it awarded to [Mosley]. The trial court also awarded the husband the commercial lot on Ziegler Road. The trial court awarded [Mosley] the remaining real estate: the 160 acres of timberland on Arden Road, the two-acre lot in Chunchula that had belonged to [Mosley’s] family; and the lot on Highway 45 in Eight Mile. The husband’s award, excluding debts and liabilities, totals approximately $1,215,000. [Mosley’s] award totals approximately $428,000. There are no outstanding debts or liabilities on the property awarded to [Mosley],
 

 “The husband maintains that the debts and liabilities on the property awarded to him amount to $784,644.69. Even if we accepted the husband’s debt- and-liability figure as accurate, the husband’s net award would amount to $430,355.31, a figure very close to [Mosley’s] net award. The husband contends that the property division was inequitable because, although the trial court gave him the assets of Builders South, it failed to include the premises on which Builders South is located, its office, warehouse, and garage — all of which are, according to the husband, necessary to the continued operation of the business. He claims that if the business has to pay the expense of relocation, as well as having to shoulder its other liabilities, it may not survive. The award of the business premises to [Mosley], of course, does not necessarily require the business to relocate. The husband may buy [Mosley’s] interest or pay her rent.
 
 Cf. James v. James,
 
 764 So.2d 549, 554 (Ala. Civ.App.1999) [reversed on other grounds,
 
 Ex parte James,
 
 764 So.2d 557 (Ala.1999) ] (observing that the trial court’s order ‘does not prohibit the husband from ... buying out [Mosley’s] ... interest’). The latter option could, in fact, be what the trial court had in mind by awarding the [Mosley] the property. She unequivocally stated that she wanted income-producing property instead of alimony.”
 

 Id.
 
 at 899-900.
 

 In the years after the entry of the divorce judgment and the issuance of our decision in
 
 Mosley,
 
 the parties filed multiple contempt petitions and motions to modify the divorce judgment.
 
 See Moss v. Mosley,
 
 948 So.2d 560, 563 (Ala.Civ.App. 2006).
 
 [2]
 
 In
 
 Moss,
 
 this court discussed the parties’ postdivorce filings that are pertinent to the instant appeal.
 

 “Many of the contempt petitions stemmed from the parties’ disagreement over the true ownership of the 168 acres of real property on Arden Road. On May 20, 2002, the parties had pending before the trial court, among other things, cross-petitions seeking to hold the other in contempt when, on that date, Builders South, Inc., moved to intervene, alleging that it was the owner of the real property located on Arden Road and averring
 
 *809
 
 that, on information and belief, [Mosley] had trespassed on the property and had harvested an unknown quantity of timber belonging to Builders South. Neither party objected to the proposed intervention, and, on July 8, 2002, the trial court granted Builders South’s motion to intervene.
 

 “On November 18, 2002, the trial court entered an order ‘restraining all parties from cutting timber from the real property, the title to which is in question, pending further orders of th[e] court.’ The order further required [Mosley] to provide an accounting of all timber cut on the property and set the matter for a hearing on all pending motions. The matter was continued and reset several times. The parties submitted briefs to the trial court outlining their respective positions. Builders South argued that the judge who had tried the divorce case had no jurisdiction to distribute property titled in Builders South when Builders South was not a party to the divorce action and the judge had made no express finding that the corporation and its assets were marital property.”
 

 Id.
 

 On November 29, 2004, the trial court entered an order determining that it had no jurisdiction to make any further orders with respect to property titled to Builders South and denying all other pending motions. On March 30, 2005, four months after that order had been entered, Builders South filed a “Motion for Clarification” as to whether the November 29 order applied to all orders of the trial court regarding property owned by Builders South or only to future orders regarding such property. On June 29, 2005, the trial court granted the motion for clarification, finding that the divorce judgment was
 

 “ ‘flawed in its inconsistent and improper distributions of the property of the in-tervenor, Builders South, Inc., when Builders South was not a party to the action, and when neither the corporation nor its assets were found to be marital assets of the parties. The Judgment purported to award the assets of Builders South to the [husband] but, in other paragraphs, awarded property to [Mosley], without acknowledging that the property was owned by Builders South, Inc. The Court, therefore reaffirms paragraph 14 of the original Judgment of Divorce which awarded “to the [husband] the business known as Builders South, Inc.[,] and the assets of said company ...” Since paragraph 9 and 11 of the original Judgment are inconsistent with the clear intent of paragraph 14, paragraphs 9 and 11 of the Judgment of Divorce are hereby void, as are any other paragraphs in the original Judgment which, without acknowledgment of ownership, awarded assets of Builders South, Inc. to [Mosley].’ ”
 

 Moss,
 
 948 So.2d at 565.
 

 Mosley (under the name “Moss,”
 
 see
 
 supra note 2) appealed from the trial court’s June 29, 2005, judgment. This court dismissed the appeal for lack of appellate jurisdiction and explained its rationale as follows:
 

 “Despite being labeled a ‘motion for clarification,’ the March 30, 2005, motion by Builders South sought more than a clarification of the trial court’s November 29, 2004, order. A ‘motion for clarification’ is just what the name implies: a request for an explanation from the trial court as to the meaning of a prior, allegedly unclear, order. A ‘motion for clarification’ does not seek to persuade the trial court that a prior judgment should be changed, modified, or invalidated. If it
 
 does
 
 seek to do any of those things,
 
 *810
 
 then it is not a ‘motion to clarify’ a judgment, but a motion to alter, amend, or vacate a judgment, one that, pursuant to Rule 59(e), Ala. R. Civ. P., must be filed not later than 30 days after entry of the judgment. If a trial court’s response to a ‘motion for clarification’ is to explain, rather than to alter, amend, or vacate a prior order, then that response is a strong indicator that the motion was, in fact, one seeking clarification.
 
 See Gold Kist, Inc. v. Crouch,
 
 671 So.2d 695, 696 (Ala.Civ.App.1995) (noting that ‘the original order was not modified by [the request for clarification]; the court simply clarified what we conclude was an abundantly clear order’). The converse is also true. If the trial court’s response to a motion for clarification does ‘more than merely clarify the trial court’s previous order,’ by making, for example, ‘modifications that [are] more substantial in nature than the correction of a mere mechanical mistake,’ then such corrections must be made pursuant to either Rule 59(e) or Rule 60(b), Ala. R.App. P.
 
 Pate v. Pate,
 
 849 So.2d 972, 976 (Ala.Civ.App.2002).
 

 “The motion by Builders South sought oral argument and attached a ‘proposed order’ aimed not only at altering the trial court’s November 29, 2004, order, but also at amending the eight-year-old divorce judgment. The motion accomplished that aim when the trial court, in purporting to amend the divorce judgment on June 29, 2005, adopted, verbatim, Builders South’s proposed order. We can hardly imagine a motion less deserving of the designation ‘motion for clarification’; we conclude that it was a postjudgment motion to alter, amend, or vacate a judgment pursuant to Rule 59(e), Ala. R.App. P. The motion cannot be construed as one pursuant to Rule 60(b), Ala. R.App. P., because it did not allege any of the grounds for relief under that rule.
 
 See Luker v. Carrell,
 
 25 So.3d 1148 (Ala.Civ.App.2006) [reversed on other grounds,
 
 Ex parte Luker,
 
 25 So.3d 1152 (Ala.2007) ].
 

 “The motion was filed on March 30, 2005, 121 days after the court’s November 29, 2004, order, long past the time for filing either a postjudgment motion pursuant to Rule 59(e), Ala. R. Civ. P., or a notice of appeal pursuant to Rule 4(a), Ala. R.App. P., and long after the trial court had lost jurisdiction to alter, amend, or vacate the November 29, 2004, order.
 
 See George v. Sims,
 
 888 So.2d 1224 (Ala.2004):
 

 “ ‘ “A final judgment is an order ‘that conclusively determines the issues before the court and ascertains and declares the rights of the parties involved.’ ”
 
 Lunceford v. Monumental Life Ins. Co.,
 
 641 So.2d 244, 246 (Ala.1994) (quoting
 
 Bean v. Craig,
 
 557 So.2d 1249,1253 (Ala.1990)). Generally, a trial court has no jurisdiction to modify or amend a final order more than 30 days after the judgment has been entered, except to correct clerical errors. See Rule 59(e) and Rule 60, Ala. R. Civ. P.;
 
 Cornelius v. Green,
 
 477 So.2d 1363, 1365 (AIa.1985) (holding that the trial court had no jurisdiction to modify its final order more than 30 days after its final judgment);
 
 Dickerson v. Dickerson,
 
 885 So.2d 160, 166 (Ala.Civ.App.2003) (holding that, absent a timely post-judgment motion, the trial court has no jurisdiction to alter, amend, or vacate a final judgment); and
 
 Superior Sec. Serv., Inc. v. Azalea City Fed. Credit Union,
 
 651 So.2d 28, 29 (Ala. Civ.App.1994) (“It is well settled that after 30 days elapse following the entry of a judgment, the trial court no longer has authority to correct or
 
 *811
 
 amend its judgment, except for clerical errors.”).’
 

 “888 So.2d at 1226-27.
 

 “Because the trial court’s November 29, 2004, order became final before Builders South ever filed its ‘Motion for Clarification,’ the court had no jurisdiction to amend its November 29, 2004, order and its June 29, 2005, order purporting to do so and to amend the divorce judgment is void. An appeal from a void judgment must be dismissed.
 
 See, e.g., Ex parte Citizens Bank,
 
 879 So.2d 535, 540 (Ala.2003); and
 
 Carter v. Hilliard,
 
 838 So.2d 1062 (Ala.Civ.App. 2002).”
 

 Moss,
 
 948 So.2d at 565-66.
 

 On May 30, 2007, subsequent to the issuance of this court’s opinion in
 
 Moss,
 
 Builders South filed a motion to require Mosley to deliver to it the deed to the Arden Road property that she had been awarded in the divorce judgment. On November 14, 2008, after a hearing on the motion, the trial court entered on order finding that, because Builders South had held title to the Arden Road property at the time of the divorce and because it had not been made a party to the divorce action, the trial court had lacked jurisdiction to award Mosley the Arden Road property in the divorce judgment. Accordingly, the trial court stated, that portion of the divorce judgment awarding Mosley the Arden Road property was void, and she was ordered to deliver the deed to that property to Builders South. Mosley timely appealed from the trial court’s order.
 

 Mosley contends that the November 14, 2008, order requiring her to deliver to Builders South the deed to the Arden Road property that she was awarded in the divorce judgment is barred by the doctrine of res judicata. Builders South counters that, because it was not a party to the original divorce action, res judicata is inapplicable.
 

 In
 
 Roubicek v. Roubicek,
 
 246 Ala. 442, 449, 21 So.2d 244, 251 (1945), our supreme court recognized the general rule that a divorce court lacks jurisdiction to divide property legally titled in the name of a third party not joined in the divorce action. 246 Ala. at 449, 21 So.2d at 251. The supreme court later explained the holding in
 
 Roubicek
 
 as follows:
 

 “It is obvious that the court would be guilty of denying due process to the [third party] if the court should take property of the [third party] and give it to another in a proceeding where the [third party] was not a party and was not given the elemental right to be heard.”
 

 Boswell v. Boswell,
 
 280 Ala. 53, 60, 189 So.2d 854, 860 (1966). Consistent with that reasoning, later Alabama cases have carved out an exception to the general rule that allows a divorce court to enter a judgment affecting property titled in the name of a third party when the third party appears in the divorce proceeding and, as the
 
 Boswell
 
 court put it, is “given the elemental right to be heard.”
 
 See, e.g., Moody v. Moody,
 
 339 So.2d 1030 (Ala.Civ. App.1976) (holding that, because the attorney to whom the husband had purportedly conveyed a cabin lot represented the husband throughout the divorce proceeding in which ownership of the lot was litigated and passed to wife, the divorce court did not err in entering a judgment disposing of the cabin lot without formally joining the attorney as party).
 

 In
 
 Owen v. Miller,
 
 414 So.2d 889 (Ala. 1981), a divorcing husband and his sister held joint legal title to several bank accounts. The sister appeared at the divorce trial for the purposes of attempting to gain ownership of those accounts. Also, the sister filed a successful motion with the
 
 *812
 
 divorce court to release funds in a bank account she singly owned that the divorce court had mistaken for marital property. After the trial, the divorce court awarded ownership of the disputed bank accounts to the wife and the children of the husband. 414 So.2d at 890. The sister then filed an action against the wife, the children, and the bank holding the accounts, claiming ownership of the funds in the accounts. Our supreme court concluded that, although the sister had never been made a party to the divorce proceedings, she was bound by the divorce judgment under the doctrine of res judicata as “[a] non-party who has an interest sufficiently close to the matter litigated and who had an adequate opportunity to litigate the issue in the prior proceeding.” 414 So.2d at 891.
 

 In
 
 Lyons v. Lyons,
 
 340 So.2d 450 (Ala. Civ.App.1976), a husband argued on appeal that the circuit court that had adjudicated his divorce case “was without authority to direct conveyance of corporate property in a proceeding to which the corporation was not a party.”
 
 Id.
 
 at 451. This court recognized the general rule asserted by the husband but held that an exception to that rule applied when one or both spouses treat a closely held corporation as an alter ego.
 
 Id.
 
 at 451-52. This court recognized that, in such cases, a divorce court has the authority to pierce the corporate veil and to divide corporate property without adding the corporation as a party so long as the principal of the corporation was properly before the court.
 
 Id.
 
 at 452.
 
 Lyons
 
 has often been cited as authorizing divorce courts to divide corporate assets under the alter-ego theory.
 

 There is no evidence in this case, however, that, in dividing the assets of Builders South between the parties in the divorce judgment, the trial court treated Builders South as an alter ego of either party; indeed it does not appear that the issue whether Builders South was an alter ego of either party was even raised at trial. Instead, as indicated in this court’s opinion in
 
 Mosley,
 
 supra, both the parties and the trial court simply treated Builders South, which was wholly owned by the parties, as the largest marital asset. However, the holding in
 
 Lyons
 
 does not preclude this court from applying the rule in
 
 Moody
 
 and
 
 Owen.
 

 In this case, the sole owners of Builders South were before the trial court on the issue of the division of Builders South’s assets. If Builders South had any objection to the treatment of its assets as marital property, the husband or Mosley could have raised that objection on behalf of the corporation and could have been heard on that issue. Like the attorney in
 
 Moody,
 
 the principals in the corporation sat by silently while a court took action affecting property titled in the corporation’s name. Like the sister in
 
 Owen,
 
 Builders South is bound by the judgment as a nonparty who had an interest sufficiently close to the matter litigated and who had an adequate opportunity to litigate the issue in the prior proceeding.
 

 The parties to the divorce action incorporated Builders South during the course of their marriage. The husband and Mosley were the only two corporate officers, and Mosley owned all the shares of stock in Builders South. Builders South was a significant marital asset of the parties; therefore, it was subject to equitable distribution between the divorcing parties.
 
 See, e.g., TenEyck v. TenEyck, 885
 
 So.2d 146, 154 (Ala.Civ.App.2003) (The parties’ business, a limited liability corporation, was the “only significant marital asset; [thus,] the trial court was free to include its worth in its computation of the parties’ marital assets and its equitable distribution of those assets.”);
 
 see also Shewbart
 
 
 *813
 

 v. Shewbart,
 
 19 So.3d 223 (Ala.Civ.App. 2009) (fair market value of husband’s sole proprietorship, taking into consideration all of its assets, must be used in fashioning an equitable division of marital property);
 
 Petrey v. Petrey,
 
 989 So.2d 1128 (Ala. Civ. App.2008) (affirming trial court’s judgment holding the wife in contempt for her failure to transfer to the husband a business she owned, as ordered in the divorce judgment equitably distributing the marital property);
 
 Combs v. Combs,
 
 4 So.3d 1141, 1149 (Ala.Civ.App.2008) (the husband’s landscaping business was a “major” marital asset subject to consideration in equitable division of marital property); and
 
 Wolf v. Wolf,
 
 666 So.2d 17 (Ala.Civ.App.1995) (parties’ dry-cleaning business used for the benefit of the marriage was a marital asset subject to equitable distribution between the parties). This court affirmed the trial court’s division of the parties’ marital assets.
 
 See Mosley,
 
 supra.
 

 Now, more than 11 years after this court affirmed the divorce judgment, the husband, through Builders South, has attempted to have the division of marital property reallocated to his benefit. Although mentioned above, it is worth noting again that, in affirming the trial court’s division of the marital property in the divorce judgment, this court said of the Arden Road property:
 

 “The award of the business premises to [Mosley], of course, does not necessarily require the business to relocate. The husband may buy [Mosley’s] interest or pay her rent.
 
 Cf. James v. James,
 
 764 So.2d 549, 554 (Ala.Civ.App.1999) [reversed on other grounds,
 
 Ex parte James,
 
 764 So.2d 557 (Ala.1999) ] (observing that the trial court’s order ‘does not prohibit the husband from ... buying out [Mosley’s] ... interest’). The latter option could, in fact, be what the trial court had in mind by awarding [Mosley] the property. She unequivocally stated that she wanted income-producing property instead of alimony.”
 

 Mosley,
 
 747 So.2d at 900.
 

 There is merit to Mosley’s assertion that the husband’s business, Builders South, cannot now claim that it owns the Arden Road property that was awarded to Mosley in the divorce judgment when the parties’ assets were divided between them. The practical effect of the trial court’s decision to void that provision of the divorce judgment awarding Mosley the Arden Road property is to allow the husband to attain that parcel of property in the name of the business, Builders South.
 

 “ ‘The elements of
 
 res judicata,
 
 or claim preclusion, are (1) a prior judgment on the merits, (2) rendered by a court of competent jurisdiction, (3) with substantial identity of the parties, and (4) with the same cause of action presented in both suits.
 
 Hughes v. Allenstein,
 
 514 So.2d 858, 860 (Ala.1987). If those four elements are present, any claim that was
 
 or could have been
 
 adjudicated in the prior action is barred from further litigation.’
 

 “Dairyland Ins. Co. v. Jackson,
 
 566 So.2d 723, 725 (Ala.1990) (emphasis added). ‘ “Res judicata applies not only to the exact legal theories advanced in the prior case, but to all legal theories and claims arising out of the same nucleus of operative facts.” ’
 
 Old Republic Ins. Co. v. Lanier,
 
 790 So.2d 922, 928 (Ala.2000) (quoting
 
 Wesch v. Folsom,
 
 6 F.3d 1465, 1471 (11th Cir.1993)).”
 

 Gatlin v. Joiner,
 
 31 So.3d 126, 133 (Ala. Civ.App.2009).
 

 “This court, in
 
 Whisman v. Alabama Power Co.,
 
 512 So.2d 78, 81 (Ala.1987), restated the elements of
 
 res judicata:
 

 “
 
 7RJes judicata ...
 
 involves prior litigation between a plaintiff and a de
 
 *814
 
 fendant, which is decided on the merits by a court of competent jurisdiction, and then a subsequent attempt by the prior plaintiff to relitigate the same cause of action against the same defendant, or perhaps to relitigate a different claim not previously litigated but which arises out of the same evidence. Alabama law is well settled that this will not be allowed. A valid, final judgment on the merits of the claim extinguishes the claim. If the plaintiff won, the claim is merged into the judgment; if the defendant won, the plaintiff is barred from relitigat-ing any matter which
 
 could have
 
 been litigated in the prior action.’
 

 “(Citations omitted. Emphasis in original.) This statement from
 
 Whisman
 
 is consistent with a long line of cases holding that whether the second action presents the same cause of action depends on whether the issues in the two actions are the same and on whether substantially the same evidence would support a recovery in both actions.”
 

 Equity Res. Mgmt., Inc. v. Vinson,
 
 728 So.2d 634, 636-37 (Ala.1998).
 

 “The purposes and policies promoted by the doctrine of res judicata include the interests of both the public at large and the parties to a particular action in (a) finality of judgments, (b) reducing waste of private and judicial resources, and (c) avoiding inconsistent rulings.
 
 Hughes v. Martin,
 
 533 So.2d 188, 190 (Ala.1988).”
 

 Herring-Malbis I, LLC v. TEMCO, Inc.,
 
 37 So.3d 158,167 (Ala.Civ.App.2009).
 

 “ ‘The principles of
 
 res judicata,
 
 collateral estoppel, and the finality of judgments prohibit a trial court from disturbing a final judgment.
 
 Louisville & N.R.R. v. Atkins,
 
 435 So.2d 1275 (Ala.1983);
 
 State v. Morrison Cafeterias Consolidated, Inc.,
 
 487 So.2d 898 (Ala.1985). In
 
 Louisville & N.R.R. v. Atkins
 
 this Court held that the doctrine of
 
 res judicata
 
 would be violated if the law as it evolves were made retroactive to reopen, for another trial, matters that had been laid to rest under theories of liability existing at the time they were tried must not be reopened. 435 So.2d at 1279. This Court, in
 
 State v. Morrison Cafeterias,
 
 citing
 
 Famor v. New England Mortgage Security Co.,
 
 92 Ala. 176, 9 So. 532 (1891), stated that where a party has acted upon the law as clearly declared by a judicial decision, that party will be protected even if the decision is thereafter overruled. Matters laid to rest under theories of liability existing at the time the matters were tried must not be reopened.
 
 State v. Morrison Cafeterias, supra,
 
 487 So.2d at 903. To reopen such matters would not only conflict with settled Alabama law, but also would defeat public policy considerations: “ ‘[t]he quieting of litigation; the public peace and repose; respect for judicial administration of the law, and confidence in its reasonable certainty, stability and consistency.’
 
 Bibb v. Bibb,
 
 79 Ala. 437, 444 (1885).”
 
 Stallworth v. Hicks,
 
 434 So.2d 229, 230 (Ala.1983).’
 

 “[Ex parte
 
 ]
 
 Americold [Compressors Co.],
 
 684 So.2d [140] at 144 [ (Ala. 1996) ].”
 

 Osborn v. Roche,
 
 813 So.2d 811, 819 (Ala. 2001).
 

 The division of marital assets between Mosley and the husband, including Builders South and the Arden Road property, has been decided by a judgment rendered by a court of competent jurisdiction. Whether Builders South constituted marital property subject to equitable division was clearly decided in the affirmative by
 
 *815
 
 the trial court in 1997, and that decision was affirmed by this court in
 
 Mosley,
 
 supra.
 

 Under the facts of this case, the doctrine of res judicata precludes the divorce judgment awarding Mosley the Arden Road property from being reopened to modify the division of marital property. The trial court’s order of November 14, 2008, requiring Mosley to deliver to Builders South the deed to the Arden Road property is improper and is reversed, and the cause is remanded for the trial court to enter a judgment consistent with this opinion.
 

 Mosley has requested an attorney’s fee on appeal. In this case, Mosley was required to litigate the issue of the division of marital property, which was determined in the initial divorce proceedings and subsequent appeal 11 years ago. Therefore, Mosley’s request for an attorney’s fee is granted in the amount of $2,500.
 

 REVERSED AND REMANDED.
 

 THOMPSON, P.J., and PITTMAN, BRYAN, THOMAS, and MOORE, JJ„ concur.
 

 [1]
 

 . The husband was the president of Builders South; Mosley was the secretary-treasurer. Mosley owned all the shares of stock, so that Builders South was considered a minority business enterprise.
 
 Mosley v. Mosley,
 
 747 So.2d 894, 895 (Ala.Civ.App. 1999).
 

 [2]
 

 . Mosley had remarried and had taken the name “Moss" at the time of the 2006 appeal. In this action, she once again goes by the name of "Mosley.”