On Application for Rehearing

PER CURIAM.
The opinion of August 12, 2011, is withdrawn, and the following is substituted therefor.
Anniebelle Simmons (“Anniebelle”) appeals from a judgment in favor of John Simmons (“John”) and Lori Simmons (“Lori”). We affirm.
On September 18, 2008, John and Lori sued Anniebelle, alleging that, on February 6, 1996, they had entered into a contract with Donald J. Simmons (“Donald”), who was John’s father, and Anniebelle, who was Donald’s wife, for the purchase of a house in Prattville (“the house”). John and Lori further alleged that the contract provided that, as consideration for Donald and Anniebelle’s agreeing to convey the house to them, John and Lori agreed to pay Donald and Anniebelle a down payment in the amount of $10,000 and to make the monthly payments on the mortgage encumbering the house. John and Lori also alleged that they had performed their obligations under the contract; that Donald had died; and that, after Donald died, Anniebelle had claimed that John and Lori *318 had been renting the house and had no right to a conveyance of the title to the house. As relief, John and Lori sought a judgment (1) declaring the parties’ rights and (2) awarding damages based on theories of breach of contract and misrepresentation.
On October 28, 2008, Anniebelle filed an answer to the complaint in which she (1) denied that she and Donald had agreed to sell the house to John and Lori, (2) averred that John and Lori had been renting the house, and (3) asserted, among other affirmative defenses, the Statute of Frauds.
On October 31, 2008, Tracy BirdSong, the attorney representing Anniebelle, filed a pleading on behalf of Marryann Win-gard,[1] Anniebelle’s daughter. That pleading was titled “Notice of Joinder of Party Pursuant to Rule 19[, Ala. R. Civ. P.3,” and stated:
“COMES NOW Marryann Wingard by and through counsel ... and hereby gives notice that she is a necessary party defendant in the above styled cause, in that [the house] is owned jointly by Anniebelle Simmons and Marryann Win-gard with right of survivorship.”
On January 6, 2009, the trial court entered an order in which it apparently treated the pleading filed by BirdSong on behalf of Wingard as a motion. The order stated that, “[u]pon proper service of complaint, the joinder motion [is] to be granted.” Although the record does not indicate that any subsequent attempt was made to formally serve Wingard with process, attorney Karen Materna filed a notice of appearance on January 29, 2009, which stated:
“COMES NOW Karen Materna, and files her Notice of Appearance as counsel for the Defendants, Anniebelle Simmons and Marryann Wingard in the above-styled matter. Counsel, in making her appearance requests:
“1. That all notices of continuances, trial settings, docket settings, or otherwise, announcements or notices regarding said case be forwarded to her at her address.
“2. That the name of counsel be entered herein on the appropriate Court records and she be designated as counsel of record.”
(Emphasis added.)
On March 6, 2009, Anniebelle asserted a counterclaim against John and Lori. In her counterclaim, Anniebelle alleged that there was no written agreement between the parties and that John and Lori were in unlawful possession of the house. She asserted claims of ejectment and violation of the Alabama Litigation Accountability Act (“the ALAA”), § 12-19-270 et seq., Ala. Code 1975. In addition, she interpleaded $2,810.85 that John and Lori had sent her and had designated as “house payments.” Answering the counterclaim, John and Lori admitted that Anniebelle owned legal title to the house and that there was no written agreement between the parties; however, they averred that they owned an equitable interest in the house, and they denied (1) that their possession of the house was unlawful, (2) that Anniebelle was entitled to possession of the house, and (3) that they had violated the ALAA.
The trial court received evidence ore tenus at a bench trial on December 14, 2009. Wingard testified as a witness during the trial. At the conclusion of John *319 and Lori’s case-in-chief, Materna, who had filed an appearance on behalf of both An-niebelle and Wingard, moved for a judgment as a matter of law, stating:
“We ask for a directed verdict above and beyond what is required.
“As you know — I’m not going to quote [the] statute of frauds to you, but [the] statute of frauds in any transaction in real property must be done in writing. There’s been no writing provided in any of the exhibits by [John and Lori] that they purchased [the] house or owned [the] house.... However,' there is an exception to the statute of limitations [sic]; however, case law is very specific, and that exception does not apply to family members.
“So we would ask for a directed verdict on that basis, and also on the fact that you heard testimony from both [John and Lori] here today who said that they had a verbal agreement with Mr. Donald Simmons and specifically said that they did not have any verbal communications with [Anniebelle].”
The trial court denied the motion, and the trial proceeded to a conclusion. Aside from Materna’s statement that “there is an exception to the statute of limitations [sic]; however, case law is very specific, and that exception does not apply to family members,” the record does not contain any indication that Anniebelle and Wingard asserted in the trial court that John and Lori had failed to prove that the alleged oral agreement between them and Donald and Anniebelle fell within an exception to the Statute of Frauds.
On September 7, 2010, the trial court entered a judgment stating:
“This cause coming on before this Court upon the Complaint for Declaratory Judgment, Breach of Contract and Misrepresentation as filed by John and Lori Simmons as against the named Defendant, Anniebelle Simmons and the parties appearing with counsel of record on December 14, 2009 and testimony being taken ore tenus, at length, and upon hearing the testimony, this Court finds as follows:
“1. That [John and Lori] and [Annie-belle’s] deceased husband had an agreement for the purchase of the [house] and [Anniebelle] was aware of and acquiesced in the agreement for [John and Lori] to pay for and receive the title to this subject property upon the payment schedule being completed as per the mortgage payoff.
“2. That upon the death of [Annie-belle’s] husband, [John and Lori] continued to pay the monthly payments as per the payment schedule and [An-niebelle], outside of [John and Lori’s] agreement, paid off the outstanding mortgage.
“8. That [Anniebelle’s] deceased husband had similar transactions with [Anniebelle’s] children as he had with his o[w]n son, [John],
“4. That [John and Lori] performed under the purchase agreement. [John] and Lori Simmons occupied the residence, improved the same, paid mortgage payments as scheduled[,] [r]eceived the payment coupon book[s] as they became replaced[,] [m]ain-tained the residence and performed under the terms of the purchase agreement.
“5. That [John and Lori have] substantially performed under the terms and conditions of the agreement with [John’s] father, Donald, and the Defendant, Anniebelle Simmons, is herein estopped to deny the existence of the contract.
“WHEREFORE, the premises considered, it is ORDERED, ADJUDGED, and DECREED as follows:
*320 “That the Defendant, Anniebelle Simmons shall execute and deliver to the Plaintiffs, John Simmons and Lori Simmons[,] a Warranty Deed for the [house], upon [John and Lori’s] paying to [Anniebelle] the balance of the mortgage that was due to Whitney Bank ... as of June, 2008. Balance of mortgage indebtedness to be paid to Anniebelle Simmons in 30 days.
“That the Deed executed by the Defendant, Anniebelle Simmons on July 29, 2008 [2] is hereby set aside and vacated.
“That a copy of this Order shall be recorded in the Office of the Judge of Probate, Autauga County, Alabama and indexed so as to give proper notification of the vacation of the deed recorded in [Real Property Book] 2008, Page 6285 of the same office.”[3]
Anniebelle did not file a postjudgment motion challenging the trial court’s judgment. On October 4, 2010, she timely appealed to this court. Due to lack of jurisdiction, we transferred the appeal to the supreme court, which transferred the appeal back to this court pursuant to § 12-2-7(6), Ala.Code 1975.
Anniebelle first argues that the trial court erred in entering a judgment without joining Wingard as a party to the action. However, the record indicates that Wingard was joined as a party. After BirdSong, the attorney representing An-niebelle, filed a pleading on behalf of Win-gard notifying the trial court and the parties that Wingard was a necessary party to the action because she was claiming an ownership interest in the house, the trial court, apparently treating the pleading as a motion, ordered that Wingard would be joined as a party upon her being served with process. Although the record does not indicate that any subsequent attempt was made to formally serve Wingard with process, Materna filed an appearance on behalf of Wingard. Rule 4(h), Ala. R. Civ. P., provides that “[a] defendant may accept or waive service of process.” We conclude that Materna’s filing a notice of appearance on behalf of Wingard constituted a waiver of service of process by Win-gard and effected Wingard’s joinder as a party. Accordingly, we find no merit in Anniebelle’s first argument.
Moreover, even if Wingard had not been joined as a party by waiving service of process, she would be bound by the judgment of the trial court in this case anyway under the holding of the supreme court in Owen v. Miller, 414 So.2d 889, 891-92 (Ala.1981), and the holding of this court in Mosley v. Builders South, Inc., 41 So.3d 806, 811-15 (Ala.Civ.App.2010). Wingard had actual notice of John and Lori’s action, as evidenced by the pleadings filed on her behalf by BirdSong and Materna and by her testifying as a witness at trial. Moreover, BirdSong and Materna both appeared at trial and represented the interest of Anniebelle, who claimed to own the house jointly with Wingard and whose interest in opposing the claims of John and Lori was thus identical with Wingard’s.
“In Owen v. Miller, 414 So.2d 889 (Ala.1981), a divorcing husband and his sister held joint legal title to several bank accounts. The sister appeared at *321 the divorce trial for the purposes of attempting to gain ownership of those accounts. Also, the sister filed a successful motion with the divorce court to release funds in a bank account she singly owned that the divorce court had mistaken for marital property. After the trial, the divorce court awarded ownership of the disputed bank accounts to the wife and the children of the husband. 414 So.2d at 890. The sister then filed an action against the wife, the children, and the bank holding the accounts, claiming ownership of the funds in the accounts. Our supreme court concluded that, although the sister had never been made a party to the divorce proceedings, she was bound by the divorce judgment under the doctrine of res judicata as ‘[a] non-party who has an interest sufficiently close to the matter litigated and who had an adequate opportunity to litigate the issue in the prior proceeding.’ 414 So.2d at 891.”
Mosley, 41 So.3d at 811-12.
In Mosley, this court held that a corporation that had been solely owned by a divorcing wife and husband at the time of their divorce was bound by the divorce judgment despite the fact that it had not been made a party to the divorce action because the corporation was “a nonparty who had an interest sufficiently close to the matter litigated [in the divorce action] and who had an adequate opportunity to litigate the issue [whether its assets should be divided as marital assets of the divorcing wife and husband] in the [divorce action].” 41 So.3d at 812.
Because Wingard had actual notice of John and Lori’s action and an adequate opportunity to litigate the validity of her claim to own the house jointly with Annie-belle as a joint tenant with right of surviv-orship, she would have been bound by the judgment of the trial court even if she had not waived service of process and thereby effected her joinder as a party. See Owen and Mosley.
Anniebelle also argues that we should reverse the judgment of the trial court because, she says, John and Lori failed to prove that the alleged oral contract for the sale of the house to them falls within the part-performance exception to the Statute of Frauds. Specifically, she argues (1) that the part-performance exception requires, among other things, that the party seeking to enforce an oral contract regarding the sale of land be in possession of the land and (2) that there is caselaw holding that such possession will not satisfy the part-performance exception if it could be attributed to a familial relationship between the parties to the oral contract.[4]
*322 Thus, according to Anniebelle, John and Lori’s possession of the house did not satisfy the part-performance exception because a familial relationship existed between John and Lori, on the one hand, and Donald and Anniebelle, on the other, and, therefore, John and Lori’s possession of the house could be attributable to that relationship rather than the alleged oral contract for the sale of the house.
The evidence before the trial court established that the agreement between John and Lori, on the one hand, and Donald, on the other, was oral, that it was never memorialized in writing, and that it was an agreement for the sale of land. In pertinent part, the Statute of Frauds provides:
“In the following cases, every agreement is void unless such agreement or some note or memorandum thereof expressing the consideration is in writing and subscribed by the party to be charged therewith or some other person by him thereunto lawfully authorized in writing:
“(5) Every contract for the sale of lands, tenements or hereditaments, or of any interest therein, except leases for a term not longer than one year, unless the purchase money, or a portion thereof is paid and the purchaser is put in possession of the land by the seller.”
Section 8-9-2, Ala.Code 1975.
The Statute of Frauds is an affirmative defense, and, therefore, Anniebelle bore the burden of making a prima facie showing that the contract met the criteria of § 8~9-2(5). See Ex parte Ramsay, 829 So.2d 146, 154 (Ala.2002) (“[Bjecause the Statute of Frauds is an affirmative defense, Rule 8(c), Ala. R. Civ. P., the defendant invoking it bears the burden of proving that the contract meets the stated criteria of the statute.”). The part-performance exception to the Statute of Frauds is a “matter in avoidance” of the affirmative defense of the Statute of Frauds, and, therefore, once Anniebelle made a prima facie showing that the contract met the criteria of § 8-9-2(5), John and Lori bore the burden of proving the applicability of the part-performance exception. See Ex parte Ramsay, 829 So.2d at 155 (holding that the executed-contract exception to the Statute of Frauds constituted a “matter in avoidance” of the affirmative defense of the Statute of Frauds and, therefore, that it had to be proved by the proponent of that exception); and Houston v. McClure, 456 So.2d 788, 789 (Ala.1984) (holding that, because there was no writing memorializing a contract for the dale of land that comported with the re- *323 quirements of the Statute of Frauds, the parties seeking to enforce the contract could prevail only if they proved that the part-performance exception to the Statute of Frauds was applicable).
In the case now before us, Anniebelle, by proving that the agreement between John and Lori, on the one hand, and Donald, on the other, was a contract for the sale of land that was never memorialized in writing, met her burden of making a prima facie showing that the contract met the stated criteria of § 8 — 9—2(5) and thus shifted the burden to John and Lori to prove the applicability of the part-performance exception to the Statute of Frauds. See Ex parte Ramsay. Although the trial court’s judgment does not expressly refer to the part-performance exception to the Statute of Frauds, it does refer to John and Lori’s occupying the house, their making mortgage payments on the house, and their substantially performing their agreement with Donald. Those references indicate that the trial court found that John and Lori had met their burden of proving the applicability of the part-performance exception and that the trial court based its judgment in favor of John and Lori on that finding. Before us, Anniebelle argues that the trial court erred in entering a judgment in favor of John and Lori based on its finding that they had proved the applicability of the part-performance exception because, she says, they failed to prove the applicability of that exception.
However, even if John and Lori failed to prove the applicability of the part-performance exception and, therefore, the trial court erred in entering a judgment in their favor based on that exception, we cannot reverse the judgment of the trial court on the ground that John and Lori failed to prove the applicability of the part-performance exception unless Anniebelle preserved that ground for review on appeal. See Smith v. Equifax Services, Inc., 537 So.2d 463, 465 (Ala.1988). As the supreme court explained in Smith:
“An appellee can defend the trial court’s ruling with an argument not raised below, for this Court ‘will affirm the judgment appealed from if supported on any valid legal ground.’ Tucker v. Nichols, 431 So.2d 1263, 1265 (Ala.1983). There is a rather obvious fundamental difference in upholding the trial court’s judgment and reversing it; this Court will not reverse the trial court’s judgment on a ground raised for the first time on appeal, Costarides v. Miller, 374 So.2d 1335 (Ala.1979), even though it affirms judgments on bases not asserted in the trial court, Bank of the Southeast v. Koslin, 380 So.2d 826 (Ala.1980). This difference is predicated on the long-standing, well-established rule that [in order to secure a reversal] the appellant has an affirmative duty of showing error upon the record.’ Tucker v. Nichols, supra, at 1264.”
537 So.2d at 465 (first and last emphases added).
In the case now before us, the only indication in the record that Anniebelle asserted that John and Lori had failed to prove the applicability of the part-performance exception to the Statute of Frauds is Materna’s statement during the trial that “there is an exception to the statute of limitations [sic]; however, case law is very specific, and that exception does not apply to family members.” That cryptic statement did not inform the trial court that the exception to which Materna was referring was the part-performance exception, did not cite any specific cases from which the trial court could have ascertained that Ma-terna was referring to the part-performance exception, did not explain why the part-performance exception might not apply to agreements between family mem *324 bers, and did not cite any specific cases from which the trial court could have ascertained why the applicability of the part-performance exception might not apply to agreements between family members. Consequently, we conclude that Materna’s statement did not preserve for appeal An~ niebelle’s argument that John and Lori failed to prove the applicability of the part-performance exception. Moreover, Annie-belle did not file a postjudgment motion asserting that the trial court had erred in finding in favor of John and Lori on the ground that they had failed to prove the applicability of the part-performance exception to the Statute of Frauds. See Employees of the Montgomery County Sheriff’s Dep’t v. Marshall, 893 So.2d 326, 331 (Ala.2004) (holding that, when a trial court commits an error of law in its judgment and that error has not been the subject of a previous objection and ruling, an objection to that error must be presented to the trial court in a timely Rule 59(e), Ala. R. Civ. P., postjudgment motion in order to preserve the error for an appeal). Therefore, we affirm the trial court’s judgment. See Smith v. Equifax Sews., Inc.; see also City of Huntsville v. Stove House 5, Inc., 3 So.3d 186, 192-94 (Ala.2008) (holding that the judgment of the trial court could not be reversed on the ground that a case relied upon by the trial court was distinguishable because the appellant had not argued in the trial court that the case was distinguishable).
APPLICATION GRANTED; OPINION OF AUGUST 12, 2011, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
All the judges concur.

. Two different versions of Wingard’s given name appear in the record — Marryann and Mary Ann.

. The deed executed by Anniebelle on July 29, 2008, conveyed the house to Anniebelle and Wingard as joint tenants with right of surviv-orship.

. The deed recorded in Real Property Book 2008, Page 6285 of the records in the Office of the Judge of Probate of Autauga County was the deed executed by Anniebelle on July 29, 2008, which conveyed the house to Annie-belle and Wingard as joint tenants with right of survivorship.

. In Smith v. Smith, 466 So.2d 922, 924-25 (Ala. 1985), the supreme court stated:
"The possession requirement of the 'part performance exception’ to the requirement of a writing in land sales contracts was addressed in Houston v. McClure, 425 So.2d 1114 (Ala.1983). In that case, we reversed a summary judgment entered in a specific performance suit because there was a factual issue as to whether the acts of possession in the case were ‘referable exclusively to the contract.’ This requirement is mentioned in Hagood v. Spinks, 219 Ala. 503, 122 So. 815 (1929), in which the Court said:
“ ‘To take a case out of the statute of frauds ... upon the ground of part performance, the acts of possession must be clear and definite, and referable exclusively to the contract, and by authority of the vendor. The existence of the contract and its terms should be established by competent proof to be clear, definite, and unequivocal in all its terms. If its terms, or the necessary acts of part performance, are not sustained by satisfactory proof, specific performance will not be decreed.' (Citations omitted.)
"219 Ala. at 504, 122 So. at 816. The meaning of 'referable exclusively to the contract’ was discussed in Jones v. Jones, 219 Ala. 62, 121 So. 78 (1929). The Court stated as follows:
*322 " 'The cases also hold that the possession of the purchaser must be exclusively referable to the contract ... "that is to say, it must be such possession that an outsider, knowing all the circumstances attending it save only the one fact, the alleged oral contract, would naturally and reasonably infer that some contract existed relating to the land, of the same general nature as the contract alleged” (36 Cyc. 660)....’
"219 Ala. at 63-64, 121 So. at 78. The Jones Court went on to say that
. the possession must be referable to the promise and not to some domestic
relationship of the vendor and vendee. 36 Cyc. 660, note 77.
"219 Ala. at 64, 121 So. at 78. The Court went further in adopting the following excerpt:
" 'In 36 Cyc. 660, is the following: “If the possession ... could be accounted for just as well by some other right or title actually existing in the vendee’s favor, or by some relation between him and the vendor other than the alleged oral contract, it is not such a possession as the doctrine requires.” ’
"219 Ala. at 64, 121 So. at 79.”
(Footnote omitted.)