DONALDSON, Judge.
Elizabeth Bonner (“the wife”) appeals from a judgment of the Madison Circuit Court (“the trial court”) ordering joint legal and physical custody of P.B. (“the child”) to her and the child’s father, Michael James Bonner (“the husband”), designating the husband as the decision maker regarding the child’s education, declining to order child support, and declining to divide certain real property jointly owned by the parties and a non-party. Because the wife fails to demonstrate reversible error, we affirm the trial court’s judgment.

*699
Facts and Procedural History

The parties were married on August 30, 1997, in Michigan. The child was born on August 29, 2000. Shortly after the September 11, 2001, terrorist attacks, the husband was placed on active duty by the United States Army. After the husband had completed three deployments, in 2007 the wife and the child moved with the husband to Huntsville, where he was stationed. The parties have lived continuously in Madison County since 2007. In 2009, the husband retired from the United States Army and began working as a pilot for Spirit Airlines.
On July 12, 2012, the wife filed a complaint for a divorce, and on August 28, 2012, the husband filed an answer and a counterclaim for a divorce. Both parties sought joint legal custody and sole physical custody of the child, child support, and an equitable division of the marital property.
The trial court conducted a hearing on July 29-30, 2014. The wife testified that she had been the child’s primary caregiver during the husband’s military deployments. She testified that, since he began working for an airline, the husband rarely telephoned the child while at work, spent little time with the child on his off days, and had cared for the child overnight by himself only once. The husband testified that, during the pendency of the divorce action, he had been at the marital residence less frequently because he had been helping his father and stepmother move and because he had been accommodating the wife’s request that he not be at the residence when the child was not there. He also testified that he had been less involved with the child’s homeschool events and other activities during that period because, he said, his presence made the wife uncomfortable.
The wife testified that the husband and the child regularly participated in activities together, such as hiking, bike riding, bowling, going out to eat, going to video-game arcades, playing with remote-control boats and airplanes, and going to the movies. The wife also testified that the husband attended events, such as the child’s concerts, award ceremonies, church activities, and cub-scout meetings. The husband testified that he had taught the child how to service a lawnmower, to maintain a car, and to change a tire. The parties testified that the husband is primarily responsible for requiring the child to perform chores. The wife testified that both parties had disciplined the child.
The wife testified that the husband’s work schedule varied every month and that, on average, he would have four or five days off at a time before working for six days at a time. The wife testified that, during the days when he is not working, the husband could care for the child all day. The husband testified that his job guaranteed 15 days off a month and that his increasing seniority improves his ability to manage his schedule. He testified that he had the option of “dropping flights,” which would entail a reduction in income but would allow more time off work.
The parties disagreed over the child’s education. The wife testified that the child has been homeschooled since the first grade and that she would prefer to continue homeschooling the child. She testified that the child was advanced academically, but that most public and private schools would keep the child in the grade typically associated with his age. The wife testified that the child had dysgraphia, a condition she described as a disconnect between the brain and the hands that causes problems with the act of writing.
The husband testified that he preferred to enroll the child in a public school where, *700 he asserted, the child would face more challenges in a structured learning environment, have more opportunities to make friends and meet people of diverse backgrounds, and receive an emphasis on his physical education and fitness, which he did not receive in homeschooling. He testified that a nearby middle school promoted a non-bullying environment and would accommodate the child’s dysgraphia. The husband testified that having to meet deadlines and be a self-motivator in a public school would better prepare the child for college and the work environment.
The husband testified that he disagreed with the wife over the child’s sleep schedule on school days, over whether to involve the child in athletic programs, and over whether the child should eventually enter military service. Both parties testified that they intended to cooperate with the other party regardless of how the trial court determined custody.
In his CS-41 Child-Support-Obligation Income Statement/Affidavit form, the husband reported earning $12,367 a month in employment income and receiving $5,698 a month in military-retirement benefits, for a total monthly gross income of $18,065. In her CS-41 form, the wife reported a monthly income of $1,800. The wife testified that she received income for sewing clothes for a friend and for managing her niece’s homeschooling. The wife was licensed to practice law in Michigan, but she had not taken the Alabama Bar exam. Her resume indicates that she worked as an attorney before the marriage. At the time the parties married, the wife was working as a trust officer for a bank in Michigan. She subsequently worked for a law firm until she became a stay-at-home mother after the child was born in 2000.
The wife testified that she was seeking employment. Her job search was focused on obtaining a part-time paralegal job that involved telecommuting. The wife .testified that in February 2012 she was diagnosed with common variable immune deficiency (“CVID”), a condition in which the body no longer produces antibodies for a type of bacteria that causes common ailments. The wife testified that she receives treatments that help her live a relatively normal life but that she avoids contact with people to protect herself, limiting her ability to work with the general public.
The parties stipulated to a division of their motor vehicles. The parties own a house in Michigan, from which they receive $600 a month in rental income. The wife testified that the monthly mortgage obligation for that house is $1,603.
The parties lived in a house in Madison County with the child and Jane Pattinson, the wife’s mother. The deed to the property indicates that the husband, the wife, and Pattinson are joint owners with rights of survivorship. When the house was purchased, Pattinson contributed $85,000 toward the down payment. Pattinson pays one-third of the utility expenses and $750 a month toward the mortgage debt, which the wife testified is $3,201 a month. Pat-tinson testified that, after the parties’ divorce, she planned to remain living with the wife and to split any house payments and utility bills with her.
The wife testified that she could not afford to make the monthly mortgage payments of $3,201 on the marital residence in Madison County solely from her income. She testified that living with the husband in the house after the divorce would be uncomfortable, and she requested that the court order that the house be sold. The husband testified that the house was big enough for the parties, Pattinson, and the child to live in without creating an uncomfortable situation. The husband testified that it was in everyone’s best interest to *701 remain in the house until the parties could negotiate an agreement regarding the house.
On August 6, 2013, the trial court entered a divorce judgment that, among other things, ordered the parties to have joint legal and physical custody of the child. In determining custody, the trial court considered the following factors:
“a. The past and present ability of the parents to cooperate with each other and make decisions jointly. The parties appeared to be able to cooperate sufficiently to support such a joint physical custody arrangement with the Court’s guidance as included in this decree.
“b. The ability of the parents to encourage the sharing of love, affection, and contact between the child and the other parent. The parents appear to be capable of mutually encouraging such appropriately.
“c. Any history of or potential for child abuse, spouse abuse, or kidnapping and which the court determines none exists for either parent. The court finds no such evidence was presented at trial, “d. The geographic proximity of the parents to each other as this relates to the practical considerations of joint physical custody. The parties are likely to remain in the same general area within Madison County, Alabama after divorcing.”
The trial court divided authority over certain major decision-making matters concerning the child between the parties. It designated primary authority over the child’s education to the husband.
The judgment arranged the parties’ custodial schedule with the child in the following manner:
“Due to the [husband’s] unique and fluctuating work schedule as a commercial airline pilot, the parties are to work together to schedule equal time for each party to exercise custody with the child. The parties are urged to work together and exercise their respective visitation in a manner that is in the best interest of the child and his education and activities. If,. however, the parties cannot agree on a schedule, the parties shall abide by the following schedule of custody: The parties’ minor child shall reside with each parent on an alternating week basis, which shall begin at 6:00 p.m. on Sunday, and end at 6:00 p.m. the next following Sunday. The [husband] shall exercise physical custody of the child on holidays and special occasions. [The wife] shall exercise physical custody of the child for the same holidays and special occasions in the years opposite those specified to be exercised by the [husband].”
The judgment incorporates by reference a separate document described as the “Standard Parenting Clauses”; however, the referenced document is not included in the record.
The trial court declined to order child support to be paid by either party, finding “that application of the Child Support Guidelines of Rule 32 of the Alabama Rules of Judicial Administration in this matter would be manifestly unfair or inequitable because of the joint physical custody arrangement of the order.” The trial court ordered the husband to pay periodic alimony to the wife for five years, in the following amounts: $2,000 per month for the first year, $1,500 per month for the second year, $1,000 per month for the third year, and $500 per month for the next two years. The judgment ordered the husband to pay for the wife’s health insurance for two years, and the wife and the child are to remain as beneficiaries of the husband’s life-insurance policies.
*702 The judgment maintained the parties’ joint ownership of their Michigan home, finding that the mortgage debt associated with that property exceeded the value of that property. Regarding the parties’ Madison County house, the trial court held:
“The Court finds that the ... marital residence located [in] Huntsville, Alabama is .owned jointly by the parties together with the [w]ife’s mother. The wife’s mother has not been joined as a party. to this matter; therefore, the Court does not have jurisdiction over disposition of this property. No order regarding this property is made.”
On August 30, 2013, the wife filed a motion for a new trial or, in the alternative, to alter, amend,.or vacate the divorce judgment on the ground that insufficient evidence supported the order of joint custody and the designation of the husband as the primary decision-making authority regarding the child’s education. The wife also contended that the custodial schedule was not in the child’s best interest and that the failure to award her child support was inequitable and unsupported by the facts. On September 10, 2013, the wife filed a supplement to her motion, arguing that, “[although [the trial court] does not have jurisdiction over [Pattinson], [the trial court] certainly retains jurisdiction to handle the disposition of [the marital residence] relative to the parties of this divorce.” On September 3, 2013, the husband filed a motion to alter or amend the divorce judgment insofar as it addressed the division of retirement assets. The divorce judgment referred to a stipulated division of retirement accounts, but the stipulation was not included in the judgment. After a hearing on the motions, the trial court amended the divorce judgment and entered a final judgment on September 23, 2013, dividing the retirement accounts between the parties. The wife received 15.46% of the husband’s military-retirement benefits. The trial court denied the wife’s motion for a new trial and all other requests to amend the divorce judgment. On October 29, 2013, the wife filed a notice of appeal to this court.
On appeal, the wife argues that the trial court erred in ordering the parties to have joint custody, in providing the husband with primary authority over the child’s education, in failing to order child support, and in finding a lack of jurisdiction over the Madison County house. Additionally, the wife argues that the custody arrangement fails to comply with statutory requirements.

Standard of Review

The following standard applies to our review of the discretionary decisions made by the trial court:
“A divorce judgment that is based on evidence presented ore tenus is afforded a presumption of correctness. Brown v. Brown, 719 So.2d 228 (Ala.Civ.App.1998). This presumption of correctness is based upon the trial court’s unique position to observe the parties and witnesses firsthand and to evaluate their demeanor and credibility. Brown, supra; Hall v. Mazzone, 486 So.2d 408 (Ala.1986). A judgment of the trial court based on its findings of facts will be reversed only where it is so unsupported by the evidence as to be plainly and palpably wrong. Brown, supra. However, there is no presumption of correctness in the trial court’s application of law to the facts. Gaston v. Ames, 514 So.2d 877 (Ala.1987).”
Robinson v. Robinson, 795 So.2d 729, 732-33 (Ala.Civ.App.2001).

Discussion

I. Joint Custody

The wife first contends that the trial court’s order of joint legal and physi *703 cal custody to the parties was not in the child’s best interest. Section 30-3-152(a), Ala.Code 1975, provides:
“The court shall in every case consider joint custody but may award any form of custody which is determined to be in the best interest of the child. In determining whether joint custody is in the best interest of the child, the court shall consider the same factors considered in awarding sole legal and physical custody and all of the following factors:
“(1) The agreement or lack of agreement of the parents on joint custody.
“(2) The past and present ability of the parents to cooperate with each other and make decisions jointly.
“(3) The ability of the parents to encourage the sharing of love, affection, and contact between the child and the other parent.
“(4) Any history of or potential for child abuse, spouse abuse, or kidnapping.
“(5) The geographic proximity of the parents to each other as this relates to the practical considerations of joint physical custody.”
The trial court’s judgment made a finding in favor of joint custody based on an analysis of each of the factors listed in § 30-3-152(a).
The wife asserts that the record is replete with examples of problems in communication and cooperation between the parties. Many of the wife’s examples refer to conflicts involving the child’s education. The trial court’s judgment, however, resolved those types of conflicts by designating the husband as the primary decision maker regarding the child’s education. The wife’s other examples could have been viewed by the trial court as minor disagreements or communication issues not related to the child’s welfare. The wife testified that she would discuss important decisions regarding the child with the husband regardless of the trial court’s ruling on custody. She also testified that, if the trial court ordered joint custody, she was willing to communicate with the husband to coordinate their schedules. The husband testified that he would not unilaterally make important decisions regarding the child and that he would discuss such decisions with the wife. Based on the testimony of the parties and the division of decision-making authority over matters concerning the child such as education, the trial court could reasonably conclude that the parties had the ability to sufficiently communicate and cooperate for a joint physical custody arrangement. See Cleveland v. Cleveland, 18 So.3d 950, 954 (Ala.Civ.App.2009) (record failed to support mother’s assertion that hostility existed to extent that joint custody was unworkable).
The wife additionally asserts that the husband has abdicated parental responsibility for the child. Specifically, she refers to the period the husband spent in the military and his choice of a career that requires travel outside the state. She alleges that the husband had recently chosen not to spend time with the child because of his pursuit of a paramour and his choosing to devote time to attend to other personal matters; however, the wife’s references to the record to support this assertion are to the husband’s testimony that he agreed not to stay at the marital residence when the child was not there and that he had been occupied with helping his father and stepmother move. None of the evidence referenced would have required the trial court to find that the husband had abdicated his parental responsibility. In contrast, the record contains abundant evidence indicating that the husband was involved in the child’s life.
*704 The wife argues that the trial court ignored the fact that the husband is not in the state for half of each month due to his job demands. The husband testified that' his job guaranteed 15 days off a month and that his job could accommodate alternating weekly custodial periods. The wife testified that the husband had four to five days off at a time, during which, she admitted, he could care for the child at all times of the day. Thus, the wife’s argument fails to demonstrate how the husband’s job prevents him from caring for the child under an arrangement providing for equal custodial periods. See, e.g., Cleveland v. Cleveland, 18 So.3d at 955 (holding that a party’s travel due to employment “does not make an award of joint physical custody plainly and palpably wrong in every case”).

II. Plan for Joint-Custody Arrangement

The wife argues that the custodial schedule in the divorce judgment lacks the specificity required by § 30-3-153, Ala. Code 1975, which provides as follows:
“(a) In order to implement joint custody, the court shall require the parents to submit, as part of their agreement, provisions covering matters relevant to the care and custody of the child, including, but not limited to, all of the following:
“(1) The care and education of the child.
“(2) The medical and dental care of the child.
“(3) Holidays and vacations.
“(4) Child support.
“(5) Other necessary factors that affect the physical or emotional health and well-being of the child.
“(6) Designating the parent possessing primary authority and responsibility regarding involvement of the minor child in academic, religious, civic, cultural, athletic, and other activities, and in medical and dental care if the parents are unable to agree on these decisions.- The exercise of this primary authority is not intended to negate the responsibility of the parties to notify and communicate with each other as provided in this article.
“(b) If the parties are unable to reach an agreement as to the provisions in subsection (a), the court shall set the plan.”
However, the wife failed to raise this issue before the trial court. “[An appellate court] cannot consider arguments raised for the first time on appeal; rather, [its] review is restricted to the evidence and arguments considered by the trial court.” Andrews v. Merritt Oil Co., 612 So.2d 409, 410 (Ala.1992). Although the wife argued in her postjudgment motion that the custodial arrangement is not in the child’s best interest, the motion contains no argument concerning § 30-3-153 or the alleged lack of specificity in the custodial arrangement provided in the divorce judgment. We, therefore, decline to consider the wife’s argument regarding compliance with § 30-3-153.

III. Primary Authority Over the Child’s Education

The wife argues the child should not be removed from his homeschooling environment and that the trial court’s designation of the husband as the primary decision maker for the child’s education will most likely result in the child’s being enrolled in a public school. The wife, however, provides no legal authority to support her argument. It is well settled that “[t]his court will address only those issues properly presented and for which supporting authority has been cited.” Asam v. Devereaux, 686 So.2d 1222, 1224 (Ala.Civ. *705 App.1996). “Rule 28(a)(10)[, Ala. R.App. P.,] requires that arguments in briefs contain discussions of facts and relevant legal authorities that support the party’s position. If they do not, the arguments are waived.” White Sands Grp., L.L.C. v. PRS II, LLC, 998 So.2d 1042, 1058 (Ala.2008). The wife, therefore, has not established that the trial court’s designation of the husband as the primary decision maker over the child’s education is reversible error.

IV. Child Support

The wife contends that the trial court erred in not ordering the husband to pay child support.
“Actions concerning child support, although guided by the mandatory application of Rule 32, Ala. R. Jud. Admin., are still committed to the sound discretion of the trial court, and its decision on such matters will not be disturbed on appeal absent a finding that the trial court’s award is a palpable abuse of its discretion. Peck v. Peck, 581 So.2d 1119 (Ala.Civ.App.1991); Belser v. Belser, 558 So.2d 960 (Ala.Civ.App.1990). The amount of support which would result from the application of the guidelines is presumed to be the correct amount of child support. Rule 32(A), Ala. R. Jud. Admin. This presumption may be rebutted if the trial court makes a finding of fact that, based upon the evidence presented, the application of the guidelines would be manifestly unjust or inequitable. Rule 32(A)(ii), Ala. R. Jud. Admin.; Peck, supra.”
Hutchins v. Hutchins, 637 So.2d 1371, 1373-74 (Ala.Civ.App.1994). The trial court found that “application of the Child Support Guidelines of Rule 32 of the Alabama Rules of Judicial Administration in this matter would be manifestly unfair or inequitable because of the joint physical custody arrangement of the order.” The wife argues that the divorce judgment lacks sufficient factual findings to justify the deviation from the child-support guidelines. However, “[sjhared physical custody is a recognized basis for such a deviation.” Shewbart v. Shewbart, 19 So.3d 223, 231 (Ala.Civ.App.2009). The trial court stated in the divorce judgment that the joint-physical custody order was the reason for not ordering child support. The divorce judgment, therefore, contains proper justification for deviating from the child-support guidelines. See id.
 The wife further argues that the trial court failed to consider the disparity in income between her and the husband in declining to order child support to be paid. She asserts that her health issues impact her ability to work and that, pursuant to the divorce judgment, her mortgage and car-loan obligations totaling $2,267 a month exceed her monthly income. We note that, although the wife reported a monthly income of only $1,300 in her CS-41 form, the divorce judgment ordered that the wife was to receive $880 from the husband’s military-retirement benefits each month (15.46% of $5,698) and $2,000 a month in alimony for 12 months. Additionally, the trial court received evidence regarding the wife’s legal education and experience as an attorney. Although the wife testified that she had been diagnosed with CVID and that that condition impacted her ability to work, the weight of that evidence was for the trial court to assess. See Ex parte Fann, 810 So.2d 631, 633 (Ala.2001) (holding that the trial court assesses the weight of evidence and the credibility of testimony). The evidence also indicates that the parties will continue to live in the same residence after the divorce until an agreement on the disposition of that property is reached. Moreover, when a trial court properly orders joint physical custody to the parties, payment of child *706 support by one spouse to the other is not mandatory. McElheny v. Peplinski, 66 So.Bd 274, 282 (Ala.Civ.App.2010) (citing Allen v. Allen, 966 So.2d 929, 932-33 (Ala.Civ.App.2007), quoting in turn Boatfield v. Clough, 895 So.2d 354, 357 (Ala.Civ.App.2004)). Although we might have reached a different conclusion than the trial court as to this issue, we cannot hold that the failure to award child support under these circumstances is reversible error.

V. Jurisdiction Over the Marital Residence

The wife contends that the trial court committed reversible error by failing to dispose of the marital residence. The evidence in this ease shows that the marital residence was jointly owned and occupied by the parties and Pattinson. The trial court determined that it lacked jurisdiction over the residence because Pattinson had not been joined as a party to the action. Rule 19(a), Ala. R. Civ. P., provides:
“A person who is subject to jurisdiction of the court shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person’s absence may (i) as a practical matter impair or impede the person’s ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.”
“The general rule is that a trial court in a divorce action lacks jurisdiction to divide property legally titled in the name of a third party not joined in the divorce action.” Dubose v. Dubose, [Ms. 2130532, Sept. 12, 2014] — So.3d-,-(Ala.
Civ.App.2014) (citing Roubicek v. Roubicek, 246 Ala. 442, 449, 21 So.2d 244, 251 (1945)). The wife argues that Pattinson’s appearance as a witness in the case and her response to questions asked by the wife’s attorney merits application of an exception to the above-stated general rule. In Mosley v. Builders South, Inc., 41 So.3d 806, 811-12 (Ala.Civ.App.2010), this court discussed the exception to that general rule that has been applied in divorce cases such as Moody v. Moody, 339 So.2d 1030 (Ala.Civ.App.1976). The husband in Moody v. Moody, argued that the failure to join an attorney as a party to the divorce action invalidated the portion of the judgment regarding the disposition of a cabin lot. In a parenthetical description in Mosley, this court summarized the holding in Moody as follows:
“[B]ecause the attorney to whom the husband had purportedly conveyed a cabin lot represented the husband throughout the divorce proceeding in which ownership of the lot was litigated and passed to wife, the divorce court did not err in entering a judgment disposing of the cabin lot without formally joining the attorney as party.”
41 So.3d at 811. In Moody, this court stated:
“[T]he fact that one has not been technically joined as a party of record does not preclude his being bound by a judgment, if he had a sufficient interest in the suit and participated in and controlled the litigation....
“If one need not be joined as a party to be bound by the judgment, it necessarily follows that the proceeding rendering that judgment is not invalid and need not be set aside for non joinder where the interested person was present, gave testimony, and exerted substantial control over the litigation.”
*707 339 So.2d at 1034 (emphasis added). In Dubose, this court further discussed the exception, as expressed in Owen v. Miller, 414 So.2d 889 (Ala.1981), in which
“‘a divorcing husband and his sister held joint legal title to several bank accounts. The sister appeared at the divorce trial for the purposes of attempting to gain ownership of those accounts. Also, the sister filed a successful motion with the divorce court to release funds in a bank account she singly owned that the divorce court had mistaken for marital property. After the trial, the divorce court awarded ownership of the disputed bank accounts to the wife and the children of the husband. 414 So.2d at 890. The sister then filed an action against the wife, the children, and the bank holding the accounts, claiming ownership of the funds in the accounts. Our supreme court concluded that, although the sister had never been made a party to the divorce proceedings, she was bound by the divorce judgment under the doctrine of res judicata as “[a] non-party who has an interest sufficiently close to the matter litigated and who had an adequate opportunity to litigate the issue in the prior proceeding.” 414 So.2d at 891.’ ”
— So.3d at-(quoting from Mosley, 41 So.3d at 811-12) (emphasis added). See also Simmons v. Simmons, 99 So.3d 316, 320 (Ala.Civ.App.2011) (noting that a person who was joined as a party to the action would have been bound by the judgment even if she had not been joined as a party because she had an adequate opportunity to litigate the validity of her claims, “as evidenced by the pleadings filed on her behalf ... and by her testifying as a witness at trial”).
In this case, Pattinson’s participation in the litigation was solely as a witness at trial. In response to questions from the wife’s attorney, Pattinson testified:
“Q. Now, obviously, you are not a part of this divorce case?
“A. No.
“Q. What is your position on the Madison County home with regard to what happens to it after the divorce?
“A. I don’t particularly care one way or the other. I would like my $85,000 back, out of the sale of the home.
“Q. Are you asking for any money in addition to the $85,000 or just the $85,000 down payment?
“A. $85,000 will suffice.”
We cannot hold that this testimony sufficed to make Pattinson a party to the action. Even in the wife’s postjudgment motion, the wife stated that the trial court did not have jurisdiction over Pattinson. The record, thus, fails to support applying in this case the exception to the general rule that a trial court lacks jurisdiction to dispose of real property partly owned by a third party not joined in the action. See Capps v. Capps, 699 So.2d 183, 185 (Ala.Civ.App.1997) (reversing portion of divorce judgment setting aside deed from husband to his mother when mother was not joined as a party in the action and owned a one-half interest in the property); Dennis v. Dennis, 383 So.2d 187, 189 (Ala.Civ.App.1980) (affirming exclusion of marital home from property division in divorce judgment when the home was built on land owned by the husband’s father). We cannot hold the trial court’s determination that it did not have jurisdiction to dispose of the marital residence — an asset jointly owned with a nonparty — to be reversible error.

Conclusion

For the foregoing reasons, the wife has not established reversible error. We, *708 therefore, affirm the trial court’s judgment.
AFFIRMED.
THOMPSON, P.J., and PITTMAN and MOORE, JJ., concur.
THOMAS, J., concurs in part and dissents in part, with writing.