PITTMAN, Judge.
Janet Zarr (“the wife”) appeals from a judgment of the Baldwin Circuit Court (“the trial court”) dissolving her marriage to Robert Zarr, Jr. (“the husband”). We affirm in part, reverse in part, and remand with instructions.
The husband, who was born in 1963, and the wife, who was born in 1964, married in March 1986. Three children were bom of the marriage; however, only the youngest child was still a minor when the divorce judgment was entered in August 2014.[1]
In January 2011, the parties separated, and, later that same month, the husband brought an action against the wife, seeking a divorce, custody of the parties’ minor child, and an equitable division of the parties’ property. The wife answered the husband’s complaint and counterclaimed for a divorce, custody of the parties’ minor child, an award of child support, an equitable division of the parties’ property, and an award of periodic alimony. Thereafter, the trial court entered an order adopting an agreement between the parties that the husband would place in escrow pending resolution of the divorce action one-half of certain funds BP p.Lc. (“BP”) had paid to Coastal Marine Builders, LLC (“CMB”), a company owned and operated by the husband, for losses CMB had sustained as a result of the BP Deepwater Horizon oil spill (“the escrowed CMB money”); that the wife would have exclusive possession of the parties’ marital residence; and that the husband would pay the wife $1,100 per month while the divorce action was pending.
The trial court received evidence ore tenus on 4 separate days during a 23-month period that began in May 2012 and ended in March 2014. In August 2014, the trial court entered a judgment divorcing the parties; finding that both parties were responsible for the breakdown of the marriage; awarding them joint physical custody of their minor child, with custody alternating weekly; ordering the husband to pay child support in the amount of $653 per month; ordering the husband to pay periodic alimony in the amount of $500 per month; dividing the- parties’ property; and apportioning responsibility for , the payment of the parties’ debts. The wife filed a postjudgment motion challenging, among other things, the child-support award, the periodic-alimony award, and the property division. Following a hearing, the trial court entered an order granting the wife’s postjudgment motion insofar as it had sought relief regarding a clerical error in the judgment but denying it insofar as it had sought relief regarding the child-support award, the periodic-alimony award, and the property division. Thereafter, the wife timely appealed to this court.
Because the trial court received evidence ore tenus, our review is governed by the following principles:
*563 “““[W]hen a trial court hears ore tenus testimony, its findings on disputed facts are presumed correct and its judgment based on those findings will not be reversed.unless the judgment is palpably erroneous or manifestly unjust.’ ” ’ Water Works & Sanitary Sewer Bd. v. Parks, 977 So.2d 440, 443 (Ala.2007) (quoting Fadalla v. Fadalla, 929 So.2d 429, 433 (Ala.2005), quoting in turn Philpot v. State, 843 So.2d 122, 125 (Ala.2002)). ‘“The presumption of correctness, however, is rebuttable and may be overcome where there is insufficient evidence presented to the trial court to sustain its judgment.” ’ Waltman v. Rowell, 913 So.2d 1083, 1086 (Ala.2005) (quoting Dennis v. Dobbs, 474 So.2d 77, 79 (Ala.1985)). ‘Additionally, the ore tenus rule does not extend to cloak with a presumption of correctness a trial judge’s conclusions of law or the incorrect application of law to the facts.’ Waltman v. Rowell, 913 So.2d at 1086.”
Retail Developers of Alabama, LLC v. East Gadsden Golf Club, Inc., 985 So.2d 924, 929 (Ala.2007).
The wife first argues that the trial court erred with respect to the child-support award because, the wife says, the trial court deviated from the Rule 32, Ala. R. Jud. Admin., child-support guidelines without making an express finding that it would be manifestly unjust or inequitable to apply those guidelines and without stating the reasons why it would be manifestly unjust or inequitable to apply those guidelines. Rule 32(A), Ala. R. Jud. Admin., provides, in pertinent part:
“Guidelines for child support are hereby established for use in any action to establish or modify child support, whether temporary or permanent. There shall be a rebuttable presumption, in any judicial or administrative proceeding for the establishment or modification of child support, that the amount of the award that would result from the application of these guidelines is the correct amount of child support to be awarded. A ■written finding on the record indicating that the application ■ of the guidelines would be unjust or inappropriate shall be sufficient to rebut the presumption if the finding is based upon:

U

“(ii) A determination by the court, based upon evidence presented in court and stating the reasons therefor, that application of the guidelines would be manifestly unjust or inequitable.”
(Emphasis added.) Rule 32(A)(1), Ala. R. Jud. Admin., lists examples of reasons for deviating from the Rule 32 guidelines. One of those reasons is “[sjhared physical custody.” Rule 32(A)(1)(a), Ala. R. Jud. Admin.
In the case now before us, the pertinent part of the trial court’s judgment states:
“6. Child support is hereby set by this Court at $653.00 per month. The Court notes the child-support set is a deviation from the Rule 32 Guidelines filed in this matter, as the Court is not counting any income that the Husband might generate in the future from Coastal Marine Builders, LLC, and this figure is solely based [on] income that the Husband receives from Infirmary Health Care Services.”
(Emphasis added.)
In DeYoung v. DeYoung, 853 So.2d 967, 970 (Ala.Civ.App.2002), this court stated:
“When the court determines that the application of the guidelines would be manifestly unjust or inequitable and then deviates from those guidelines in setting a support obligation, the court must make the findings required by Rule 32(A)(ii), Ala. R. Jud. Admin. M.S.H. v. C.A.H., [829 So.2d 164 (Ala. *564 Civ.App.2002) ] (citing Thomas [v. Norman], 766 So.2d [857] at 859 [ (Ala.Civ.App.2000) ]). Rule 32(A), Ala. R. Jud. Admin., allows the trial court to deviate from the guidelines so long as the deviation is based on ‘evidence presented in court’ contained in a “written finding on the record.’ In other words, the subsection requires the trial court to state a reason justifying its deviation from the guidelines. However, because child support is for the benefit of the minor child, see State ex rel. Shellhouse v. Bentley, 666 So.2d 517, 518 (Ala.Civ.App.1995), the best interest of the child is the controlling consideration of the trial court in any action seeking to modify child support. Gautney v. Raymond, 709 So.2d 1279, 1281 (Ala.Civ.App.1998).”
In the case now before us, the trial court stated that it was deviating from the Rule 32 guidelines by omitting any income the husband might derive in the future .from CMB from his gross income for purposes of calculating his child-support obligation; however, the trial court did not make written findings of fact indicating why that deviation from the Rule 32 guidelines was justified. We can infer from the fact that the .trial court awarded the parties joint physical custody, with custody alternating weekly, that the trial.court deviated from the Rule 32 guidelines because it had awarded the parties shared physical custody, see Rule 32(A)(1)(a); and Bonner v. Bonner, 170 So.3d 697, 705 (Ala.Civ.App.2015) (“ ‘[S]hared physical custody is a recognized basis for ... a deviation [from the Rule 32 guidelines].’ ” (quoting Shewbart v. Shewbart, 19 So.3d 223, 231 (Ala.Civ.App.2009))); however, a trial court is required to state its reason for deviating from the Rule 32 guidelines expressly, see DeYoung, supra. Therefore, we reverse the trial court’s judgment insofar as it awarded the wife child support and remand the cause with instructions for the trial court to state in writing why it found that application of the Rule 32 guidelines would be manifestly unjust or inequitable. Although the wife makes other arguments challenging the child-support award, we do not reach those arguments.
The wife next argues that the trial court erred in dividing the parties’ property and in determining the amount of the periodic-alimony award.
“Matters of alimony and property division are interrelated, and a reviewing court must consider the entire judgment in determining whether the trial court abused its discretion on either issue. Willing v. Willing, 655 So.2d 1064 (Ala.Civ.App.1995). A trial court is free to consider the facts and circumstances unique to each individual case in fashioning a division of marital property and an award of periodic alimony. Brewer v. Brewer, 695 So.2d 1 (Ala.Civ.App.1996). The only limitation on a trial court’s broad discretion in dividing the marital estate is that the property division and alimony award must be equitable under the circumstances of the particular case; the task of determining what is equitable falls to the trial court. Cantrell v. Cantrell, 773 So.2d 487 (Ala.Civ.App.2000). A trial court’s determination as to alimony and the division of property following an ore tenus presentation of the evidence is presumed correct. See Parrish v. Parrish, 617 So.2d 1036, 1038 (Ala.Civ.App.1993). ‘This presumption of correctness is based on the trial court’s being in the unique position of being able to observe the witnesses and to assess then- demeanor and credibility. Hall v. Mazzone, 486 So.2d 408 (Ala.1986). Walls v. Walls, 860 So.2d 352, 357 (Ala.Civ.App.2003).
*565 “‘Each case is decided on its own peculiar facts and circumstances. Criteria which should be considered by the trial court when awarding alimony and dividing property include the length of the parties’ marriage, their ages, health, station in life, and future prospects; the source, value, and type of property owned; the standard of living to which the parties have become accustomed during the marriage and the. potential for maintaining that standard; and, in appropriate situations, the conduct of the parties with reference to the cause of divorce.’
“Currie v. Currie, 550 So.2d 423, 425 (Ala.Civ.App.1989).”
Hall v. Hall, 895 So.2d 299, 303 (Ala.Civ.App.2004).
“As a necessary condition to an award of periodic alimony, a petitioning spouse should first establish the standard and mode of living of the parties during the marriage and the nature of the financial costs to the parties of maintaining that station in life. See, e.g., Miller v. Miller, 695 So.2d 1192, 1194 (Ala.Civ.App.1997); and Austin v. Austin, 678 So.2d 1129, 1131 (Ala.Civ.App.1996). The petitioning spouse should then establish his or her inability to achieve that same standard of living through the use of his or her own individual assets, including his or her own separate estate, the marital property received as part of any settlement or property division, and his or her own wage-earning capacity, see Miller v. Miller, supra, with the last factor taking into account the age, health, education, and work experience of the petitioning spouse as well as prevailing economic conditions, see DeShazo v. DeShazo, 582 So.2d 564, 565 (Ala.Civ.App.1991), and any rehabilitative alimony or other benefits that will assist the petitioning spouse in obtaining and maintaining gainful employment. See Treusdell v. Treusdell, 671 So.2d 699, 704 (Ala.Civ.App.1995). If the use of his or her assets and wage-earning capacity allows the petitioning spouse to routinely meet only part of the financial costs associated with maintaining the parties’ former marital standard of living, the petitioning spouse has proven a need for additional support and maintenance that is measured by that shortfall. See Scott v. Scott, 460 So.2d 1331, 1332 (Ala.Civ.App.1984).
“Once the financial need of the petitioning spouse is established, the trial court should consider the ability of the responding spouse to meet that need. See Herboso v. Herboso, 881 So.2d 454, 458 (Ala.Civ.App.2003). The ability to pay may be proven by showing that the responding spouse has a sufficient separate estate, following the division of the marital property, see § 30-2-51(a), Ala.Code 1975, and/or sufficient earning capacity to consistently provide the petitioning spouse with the necessary funds to enable him or her to maintain the parties’ - former marital standard of living. Herboso, supra. In considering the responding spouse’s ability to pay, the trial court should take into account all the financial obligations of the responding spouse, including those obligations created by the divorce judgment. See O’Neal v. O’Neal, 678 So.2d 161, 164 (Ala.Civ.App.1996). The trial court should also consider the impact an award of periodic -alimony will have on the financial condition of the responding spouse and his or her ability to maintain the parties’ former marital lifestyle for himself or herself. Id. A responding spouse obviously has the ability to pay if the responding spouse can satisfy the entirety of the petitioning spouse’s needs without any undue economic hardship. See, e.g., MacKenzie v. Mac *566 Kenzie, 486 So.2d 1289, 1292 (Ala.Civ.App.1986). In most cases, however, simply due to the fact that, after separation, former spouses rarely can live as well and as cheaply as they did together, Gates, 830 So.2d at 750, a trial court will find that the responding spouse cannot fully meet the financial needs of the petitioning spouse. Walls v. Walls, 860 So.2d 352, 358 (Ala.Civ.App.2003). In those cases, the trial court should endeavor to determine the amount the responding spouse can fairly pay on a consistent basis. See Rubert v. Rubert, 709 So.2d 1283, 1285 (Ala.Civ.App.1998).
“After being satisfied that the petitioning spouse has a need for periodic alimony and that the responding spouse has some ability to meet that need, the trial court should consider the equities of the case. The length of the marriage does not determine the right to, or amount of, periodic alimony. Hatley v. Hatley, 51 So.3d 1031, 1035 (Ala.Civ.App.2010). However, the longer the parties have maintained certain living and financial arrangements, the more fair it will seem that those arrangements should be maintained beyond the divorce to the extent possible. See Edwards v. Edwards, 410 So.2d 91, 93 (Ala.Civ.App.1982). The trial court should also give due regard to the history of the marriage and the various economic and non-economic contributions and .sacrifices made by the parties during the marriage. See Hanna v. Hanna, 688 So.2d 887, 891 (Ala.Civ.App.1997). In light of those factor’s, the trial court should endeavor to avoid leaving the parties in an unconscionably disparate financial position. Jones v. Jones, 596 So.2d 949, 952 (Ala.Civ.App.1992). However, the trial court can consider whether the marriage, and its attendant standard of living, ended due to the greater fault of one of the parties, and, if so, the trial court can adjust the award accordingly. Yohey v. Yohey, 890 So.2d 160, 164-65 (Ala.Civ.App.2004). Lastly, the trial court should consider any and all other circumstances bearing on the fairness of its decision. See Ashbee v. Ashbee, 431 So.2d 1312, 1313-14 (Ala.Civ.App.1983).
“The determination of whether the petitioning spouse has a need for periodic alimony, of whether the responding spouse has the ability to pay periodic alimony, and of whether equitable principles require adjustments to periodic alimony are all questions of fact for the trial court, Lawrence v. Lawrence, 455 So.2d 45, 46 (Ala.Civ.App.1984), with the last issue lying particularly within the discretion of the trial court. See Nolen v. Nolen, 398 So.2d 712, 713-14 (Ala.Civ.App.1981). On appeal from ore tenus proceedings, this court presumes that the trial court properly found the facts necessary to support its judgment and prudently exercised its discretion. G.G. v. R.S.G., 668 So.2d 828, 830 (Ala.Civ.App.1995). That presumption may be overcome by a showing from the appellant that substantial evidence does not support those findings of fact, see § 12-21—12(a), Ala.Code 1975, or that the trial court otherwise acted arbitrarily, unjustly, or in contravention of the law. Dees v. Dees, 390 So.2d 1060, 1064 (Ala.Civ.App.1980).”
Shewbart v. Shewbart, 64 So.3d 1080, 1088-89 (Ala.Civ.App.2010).
The evidence regarding the value of the parties’ property was in dispute, and the trial court made no express findings regarding the value of that property. Therefore, “[w]e must view the evidence [regarding the value of the parties’ property] in the light most favorable to the trial court’s judgment.!’ Williams v. Williams, 905 So.2d 820, 827 (Ala.Civ.App.2004). The trial court awarded the wife *567 two five-acre unimproved lots, which the wife testified had a value of .$160,000; however, those lots, as well as the marital residence, are subject to a judgment in the amount of approximately $175,000 against the husband individually resulting from a debt owed by CMB (“the $175,000 judgment”). The trial court also awarded the wife her jewelry, which the husband testified had a value of $26,550, and an Infiniti automobile, which the husband testified had a value of $24,000. In addition, the trial court awarded the wife her retirement account, which the husband testified had a value of $10,000. Finally, the trial court awarded the wife miscellaneous personal property; however, the record does not indicate the value of that personal property. Thus, omitting the unimproved lots that are subject to the $175,000 judgment and the property as to which the record does not establish a value,- the record indicates- that the trial court awarded the wife property with a total net value of $60,550.
The trial court awarded the husband the marital residence, which the wife testified had a value of $150,000; however, the marital residence is subject to a mortgage in the amount of approximately $90,000 (“the $90,000 mortgage”) as well as the $175,000 judgment. The trial court ordered the husband to pay both the $90,000 mortgage and the $175,000 judgment. In addition, the trial court awarded the husband CMB, which the husband testified had a negative net worth; a vintage Mercedes automobile, which the husband testified had a value of $2,000; a pick-up truck, which the husband testified had a value of $8,000; his retirement account, which the husband testified had a value of $10,000; and the escrowed CMB money, which totaled approximately $42,000. The husband testified that liquidation of all the assets of CMB and the $42,000 in es-crowed CMB money would not be sufficient to pay off all the debts owed by CMB. Finally, the trial court awarded the husband miscellaneous personal property and the children’s automobiles; however, the record does not indicate the value of that miscellaneous personal property or the children’s automobiles. Thus, omitting the marital residence, which is subject to the $90,000 mortgage, the $175,000 judgments the escrowed CMB money, which -is offset by CMB’s debts, and the property as to which the record does not establish a value, the trial court awarded the husband property with a total net value of $20,000.
The wife introduced evidence tending to prove that it cost the parties approximately $8,000 per month to maintain their lifestyle before they separated, and she testified that it would cost her approximately $3,925 to $4,125 per month to maintain that lifestyle after the divorce based on the following itemized monthly expenses:
rent for housing—$1,000 to $1,200
utilities—$250
groceries—$600
telephone—$125
renter’s insurance—$50
automobile insurance—$125
health insurance—$450 ■
gasoline—$350 '
medical co-pays—$40
personal expenses—$200
automobile maintenance—$60
cable television service—$75
credit-card payment—$450
miscellaneous expenses—$150
However, because the mortgage payment on the marital residence was $840 per month, the trial court reasonably could have found that the $1,000 to $1,200 per month the wife claimed she would need to maintain the same standard of housing she had enjoyed during the marriage was ex *568 cessive and that the amount allowed for housing should not exceed $840 per month. Such a finding would reduce the monthly expenses claimed by the wife to $3,765. Moreover, in addition to periodic alimony in the amount of $500 per month, the trial court ordered the husband to pay “$135.00 per month for 24 months to cover one-half of the Wife’s medical insurance expenses during this 24 month[ ] period.” We can infer from that provision of the judgment that the trial court found that the wife’s actual medical-insurance premiums were $270 per month instead of the $450 per month she had claimed. Moreover, because the trial court ordered the husband to pay $135 of that amount, the $450 per month claimed by the wife for medical insurance should be reduced to $135 per month. Such a reduction in the amount she claimed for medical insurance would reduce the total monthly expenses she claimed to $3,450 per month. The trial court also ordered the husband to pay the balance of the wife’s Best Buy credit card. Although the record does not indicate the amount of the monthly payments on the wife’s Best Buy credit card, the trial court’s ordering the husband to make those payments would reduce, if not altogether eliminate, the $450 per month the wife claimed for credit-card payments. Accordingly, the trial court could reasonably have found that it would cost the wife approximately $3,250 per month to maintain the standard of living she had enjoyed during the marriage.
The wife’s actual gross monthly income was $1,666, although the record contains evidence indicating that she has the ability to earn more. The- husband’s gross monthly income was approximately $6,519, consisting of $5,983 per month in gross salary from his job with Infirmary Health Care; approximately $500 per month from CMB; and approximately $36 per month from other miscellaneous sources.
In order to determine the husband’s financial ability to pay periodic alimony, we must first deduct all the other monthly payments the trial court ordered the husband to pay. The trial court ordered the husband to pay the $90,000 mortgage, which has monthly payments of $840; $135 per month for 24 months for the wife’s medical insurance; $653 per month in child support; $305 per month for the minor child’s health insurance; the $175,000 judgment; and the balance the wife owed on her Best Buy credit card. The record indicates that the husband did not have an agreement from the judgment holder to make monthly payments on the $175,000 judgment, but the trial court reasonably could have estimated that, if he were able to negotiate such a payment schedule, those payments would be at least $1,000 per month. Likewise, the record does not expressly indicate the amount of the monthly payments on the wife’s Best Buy card; however, the trial court reasonably could have estimated that those payments were at least $200 per month based on the fact that the wife had claimed that she needed $450 per month to make payments on credit cards. Thus, the trial court reasonably could have estimated that the husband was required to make approximately $3,133 per month in payments before paying his monthly living expenses, his taxes on his gross monthly income, and periodic alimony. Deducting that $3,133 in monthly payments from the husband’s monthly gross income of $6,519 would leave the husband with approximately $3,386 per month in gross income with which to pay his personal expenses, the taxes on his gross income, and periodic alimony. The trial court reasonably could have found that the husband’s living expenses were approximately the same as the wife’s; thus, including the $840 monthly mortgage payment, the trial court rea *569 sonably could have found that his monthly living expenses were approximately $3,250. Deducting the $840 monthly- mortgage payment from the husband’s $3,250 per month in living expenses (because we have already deducted the $840 monthly mortgage payment from his gross monthly income as one of his monthly payments), leaves $2,410 in monthly living expenses of the husband that must be deducted from the remaining $3,386 of the husband’s gross monthly income in order to determine his financial ability to pay periodic alimony. Deducting that $2,410 from $3,386 would leave the husband with approximately $976 per month in gross income with which to pay his taxes on' that gross income and periodic alimony. The record does not indicate how much the taxes on the husband’s gross monthly income were; however, given that the husband would be left with only $976 per month with which to pay both those taxes and periodic alimony, we cannot hold that the trial court erred in implicitly estimating that the husband did not have the financial ability to pay more than $500 per month in periodic alimony.
Moreover, the equitable factors do not indicate that the trial court erred in establishing $500 per month as the amount of the husband’s periodic-alimony obligation. Both parties are in their 50s. Although the husband’s earning ability is greater than the wife’s, the trial court ordered him to pay most of the parties’ debts and awarded him property with a net value that is only approximately one-third of the net value of the property the trial court awarded the wife. The wife has health problems; however, they do not prevent her from working. Indeed, the undisputed evidence indicates that her health problems do not prevent her from running obstacle courses for entertainment. The wife argues that the husband’s conduct was the sole cause of the breakdown of the marriage; however, the trial court expressly found that both parties’ conduct caused the breakdown of the marriage, and, viewed in the light most favorable to the trial court’s judgment, the evidence supports that finding. Although the husband had pleaded nolo contendere to a charge of voyeurism in Florida, had been charged with, but not convicted of, the crime of fraud involving a credit card, and had had an affair, the wife had been addicted to prescription pain medication, had written bad checks that cost the parties in excess of $40,000 in bank and merchant fees; and had obtained a credit card and incurred $50,000 in charges on that card without the husband’s knowledge. The marriage had lasted 28 years; however, because both parties’ conduct caused the breakdown of the marriage, the length of the marriage is a neutral factor that does not favor either party. Accordingly, based on the evidence before the trial court, we conclude that the trial court did not err in dividing the parties’ property and in awarding the wife periodic alimony in the amount of $500 per month.
In summary, we reverse the trial court’s judgment with respect to the award of child support, we remand the cause for the trial court to state why applying the Rule 32 guidelines would be manifestly unjust or inequitable, and we affirm the trial court’s judgment in all other respects.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
THOMAS, MOORE, and DONALDSON, JJ., concur.
THOMPSON, P.J., concurs in the result, without writing.

. The parties' youngest child subsequently reached the age of majority in October 2015.